[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on July 18, 1982 in Hamden, Connecticut. They had, however, lived together for one and a half years prior to that date. There are two children issue of this marriage, Vincent Carl Fusco born January 17, 1983 and Louis Jon Fusco born May 21, 1985. Each of the parties is forty years of age.
The plaintiff has a bachelor's degree in Biology, a bachelor's degree in Marine Biology, a master's degree in Environmental Science and lacks a few credits of her master's degree in Marine Biology. At the time of the marriage she was teaching oceanography and general science at West Haven High School. Following the parties' marriage, the plaintiff continued to teach for a few months only, leaving because of her pregnancy with their first child.
The plaintiff started teaching in 1979 and concluded in November, 1982. She has not returned to teaching, but has, however, worked as a part time bookkeeper for the defendant in his business during the years 1984, 1985, 1986, 1987, 1988 and in 1989 until June, 1989. She received $8,400.00 from the business in 1987 and $10,400.00 in 1988. This work was done at home on a computer terminal connected with another computer terminal at the defendant's business. It is the plaintiff's claim that during this period she was unable to do work outside of the home because of her diabetes, the tender years of the children requiring her care, and her husband's forbidding.
Since the age of twelve, the plaintiff has been a diabetic. For the past eight years she has worn an insulin pump and has had to test her glucose approximately six times during the day. The plaintiff also claims she has had problems with her eyes some of which is related to her diabetes and some of which is not. The retinopathy of which she complains is related CT Page 2826 to her diabetes. The plaintiff complains, also, of carpal tunnel syndrome diagnosed around 1980. She has not been treated for this condition. It is the plaintiff's claim that she will not be able to return to her teaching position and her ability to earn will be very much reduced by reason of her overall health. She received an offer to teach on the schooner sailing from New Haven at an annual salary of $19,000.00. Salaries for teachers with her credentials are earning in the $30,000.00's per year.
With regard to the children, the older child, Vincent, has been a student at The Family School in Bridgeport in a special education program for two years. He has entered Middlebrook School in Trumbull with hours of 9:00 a.m. to 3:00 p.m. and is bused. The younger child, Louis, has entered kindergarten and also has hours of 9:00 a.m. to 3:00 p.m. and is also bused. The children leave home for school around 8:30 a.m. and return home about 3:10 p.m.
The defendant is the proprietor and owner of a gas station at 2607 Broadbridge Avenue in Stratford. The business operated under the name of Broadbridge Automotive Services, Inc. and was incorporated July 1, 1981, when the parties were living together. At that time the defendant was leasing the station from Chevron. On November 30, 1984, the defendant purchased the property for $150,000.00 (plaintiff's exhibit O) with a $100,000.00 mortgage from Lafayette Bank and Trust Company cosigned by the plaintiff (plaintiff's exhibit R) and a contribution by the plaintiff of $32,000.00 toward the purchase of the property consisting of money realized from the sale of plaintiff's property on Sperry Street in Stratford in July, 1984, ($22,359.00) and money received from her mother and grandmother from November, 1983, to November of 1984 of $9,700.00.
The defendant is paying himself an annual salary of $60,000.00. He has twelve employees in this business, and for the corporate year ending June 30, 1990, the business had gross receipts of $1,133,545.00; for the year ended June 30, 1989, $1,172,000; and for the year ended June 30, 1988, $1,145,770.00. In addition to his salary, the defendant receives $72,000.00 annually from the corporation by way of rental income. His financial affidavit reflects expenses of $75,000.00 against the rental income. There are two mortgages to Lafayette Bank Trust Company, the initial $100,000.00 mortgage, a construction mortgage of $300,000.00 and an unsecured loan of $115,000.00, upon all of which the plaintiff cosigned.
In addition to the Broadbridge Avenue property owned by the defendant, the parties jointly own the family home at 470 CT Page 2827 Shelton Road in Trumbull. This property was purchased in September, 1983 for $125,000.00. It has been appraised by Mr. Lefsetz for $175,000.00 and by Mr. Zeidell for $235,000.00. The court finds the value of this property to be $215,000.00.
The defendant is in good health, has had a high school education and training in automotive repair. At the time of the marriage, he owned a single family house on Capital Avenue in Bridgeport which was occupied by his aunt. This property was sold in January, 1985, the defendant realizing net proceeds of $46,734.00.
Prior to the marriage, the defendant purchased a boat slip for $29,500.00 at Oyster Landing in Milford which will accommodate a 45' boat. In 1984 he purchased a 1974 Glastron, 18' runabout with trailer, subsequently owned a Chris Craft which he sold to his brother for $1.00, and in 1988 he purchased a 1979 24' Sea Ray. The family took Sunday outings on the boat. The boats and trailer are valued on his financial affidavit at $12,000.00. At the time of the purchase of the boat slip, the defendant borrowed $26,500.00 from Lionel Burke. (Plaintiff's exhibit E.) Mr. Burke was paid back after the marriage with joint funds.
The defendant has used the Oyster Landing boat slip only slightly. He keeps the Sea Ray moored at the East End Yacht Club where he is a member and the Glastron runabout on its trailer.
The marriage of the parties has broken down irretrievably. The plaintiff testified that the defendant had stated on at least three occasions in 1988 that he did not love her and that he did not care about her anymore. She testified that he was never sympathetic to her needs, that he drank heavily, did not come home until late, was dictatorial, belittled her, called her filthy names, embarrassed her in the presence of others and destroyed her self-esteem. She described the defendant as the "Big Boss and ruler of the household", which Mr. Fusco denies.
This is the third marriage for the plaintiff. She was first married at the age of 19 to her high school sweetheart. This lasted one and a half years. She was next married at the age of 25 for four years. She met the defendant while the dissolution proceeding for her second marriage was "just ending." It is the second marriage for the defendant. Neither of the parties have children of their earlier marriages.
The real property at 2607 Broadbridge Avenue in Stratford, as previously noted, was purchased for $150,000.00. CT Page 2828 There are two outstanding mortgages on that property with current principal balances of $346,371.00.
The defendant values the property and business at a net equity of $153,629.00, gross value $500,000.00, in his financial affidavit of August 7. On the other hand, the defendant had stated to the plaintiff in July, 1989, that the real estate was worth $750,000.00 and the business worth $500,000.00. The value of $750,000.00 for the property is supported by plaintiff's exhibit AA, a financial statement dated June 1, 1988, supplied to Lafayette Bank Trust Company. In that statement, the corporation is valued at $350,000.00. In the defendant's financial affidavit of August 7, 1990, he states, under Part 4E, that the value of the business is unknown. In his financial affidavit of November 3, 1989, he shows the business value as $350,000.00 and the real estate value at $500,000.00. His real estate valuation of $500,000.00 agrees with the testimony of Mr. Hodson who valued the real property at $500,000.00. Mr. Lefsetz valued this property at $570,000.00. The court finds the value of the 2607 Broadbridge Avenue real property to be $525,000.00.
The defendant's financial affidavit reflects liabilities of $62,076.00 which are attributable to work done upon the property at 2607 Broadbridge Avenue. Subtracting these liabilities and the present balance of the mortgages from the value of the real estate leaves a net equity of $116,553.00.
The business has assets consisting of two computers, four monitors, four keyboards, three printers, desks, computerized engine analyzer, computerized front end alignment equipment, special machinery for working on trucks, wrecker, hydraulic lifts, limousine, trucks, couple of sports cars, parts, tires, six gasoline pumps and three 6,000 gallon inground tanks, a repairer's license and two repairer plates. There is outstanding indebtedness to Lafayette Bank Trust Company of $115,000.00. The court finds the business is worth $350,000.00. Assuming the debt to Vito and Concetta Fusco is a debt of the business, the net value of the business is $225,000.00.
The defendant values the Oyster Landing boat slip at $80,000.00. The plaintiff values this at $90,000.00, and the parties, themselves, valued the boat slip in their statement to Lafayette Bank of June 1, 1988 in that amount. The defendant on the witness stand has stated the boat slip is now worth "less than $65,000.00." The court finds a value of $80,000.00.
With regard to the real property at 470 Shelton Road, the net equity of this property is found to be $144,000.00.[1]
There are outstanding liabilities as reflected in the CT Page 2829 defendant's financial affidavit of $50,129.00 for work done upon this property. The plaintiff contributed the entire down payment for the purchase of this property and paid $25,000.00 down on the mortgage when her property on Spring Street in Stratford was sold.
With respect to the plaintiff's assets, her 1989 Mitsubishi Montero was a gift from her mother and grandmother and her IRA account was contributed entirely by her grandmother. At the commencement of the marriage, there was an outstanding student loan for $5,000.00 with interest. Her mother gave her money to pay down this loan with interest so that the present balance is approximately $2,000.00.
The plaintiff's mother and grandmother have been most generous in gifts to the plaintiff during the marriage. There was a $1,000.00 wedding present from mother; money to pay down the student loan given by her mother; $500.00 from mother every Christmas, every birthday in May and every November; a $10,000.00 gift from grandmother to buy the Montero; a $10,000.00 gift from mother to buy the Montero; a $20,000.00 gift from mother to Carol and Vincent for purchase of Shelton Road; a $2,500.00 gift from mother in November, 1983; a $700.00 gift from grandmother in December, 1983; a $5,000.00 gift from mother in May, 1984; and $2,000.00 annually from grandmother for contribution to the plaintiff's IRA account. The gifts from mother exceeded $66,000.00. Total gifts from grandmother exceeded $47,000.00
Much as been made of $22,000.00 of "hidden money" in 1985, the large amounts of cash carried by the defendant and the cash purchases of most groceries, most clothing and many items on vacations. It is the plaintiff's position that this was cash from the business not reflected in the business receipts so that the defendant's income is greater than that reflected in his financial affidavit. The defendant maintained that checks drawn on the checking account were often "cashed" in the business and that was the money that he had as cash. The plaintiff's salary checks were often "cashed" in the business.
The defendant also stated that he did gamble when they were away on vacations and that that cash was gambling winnings. He stated he would put large bills — $100.00 bills on the outside of a roll of money and small bills inside so that it looked like he had a large amount of money in a roll that he carried in his pocket. The court finds that there is no large amounts of cash being withdrawn from the business and that the defendant satisfactorily explained the appearances of large amounts of cash as testified to by the plaintiff. CT Page 2830
In addition to the assets previously stated, the defendant owns land in Newtown valued at $5,000.00 and land at Palm Coast, Florida valued at $10,000.00, both of which he owned prior to his marriage to the plaintiff.
The net assets of the parties may be described and valued as follows:
470 Shelton Road, Trumbull $144,000.00 2607 Broadbridge Avenue, Stratford 116,553.00 100 shares Broadbridge Automotive, Inc. 225,000.00[1]
Lot, Palm Coast, Florida 10,000.00 Lot, Pootatuck Estates, Newtown 5,000.00 Oyster Landing Boat Slip 80,000.00 Two boats, 1 trailer 12,000.00 1957 Chevrolet 2,000.00 200 shares IPCO 1,500.00 Mr. Fusco's IRA's 24,144.00 Mrs. Fusco's IRA's 23,066.00 ----------- TOTAL $643,263.00
Carried Forward $643,263.00
Mrs. Fusco's Retirement Plan 6,785.00 Mrs. Fusco's Insurance 943.00 Mrs. Fusco's two United States Bonds 100.00 Mrs. Fusco's bank accounts 1,866.00 Mrs. Fusco's Mitsubishi 9,000.00 Mr. Fusco's Shearson Lehman account 4,808.00 ----------- $666,765.00
Liabilities:
Student Loan (Mrs.) $ 1,996.50 Visa (Mrs.) 414.37 Mastercard (joint) 2,287.99 Tuition — oldest child 5,413.00 Dr. Etkind (Mrs.) 744.10 Edwina Morehouse (Mrs.' mother) 3,800.00 Standard Oil 415.00 LGB, Inc. 1,037.00 Town of Trumbull 375.00 United Illuminating 816.00 SNET 169.20 Security Conn. Life 151.00 Major Med 228.00 Miscellaneous 569.00 CT Page 2831 Kenneth Fusco 750.00 State of Connecticut 5,216.00 Laurel School 845.00 Outstanding liabilities — 470 Shelton Road 50,129.00 ----------- TOTAL LIABILITIES $ 75,356.16
NET WORTH BOTH PARTIES $591,408.84
Trial of this matter has lasted over fifteen trial days. Counsel for the parties have left no stone unturned in their presentation of the evidence. There have been many claims and counterclaims and differences in the testimony of the witnesses. There is one issue upon which the parties have reached agreement and that is the issue of custody of the minor children.
In a report of mediation dated December 14, 1989, the parties have agreed as follows: "To share joint custody of their children with primary residence with the mother. The children will have liberal contact with the father upon twenty hours notice. If either party plans to relocate farther than fifty (50) miles from their present residences, they must consult each other."
There has been evidence of the plaintiff's violation of an order of this court entered on November 3, 1989 which was entered by agreement of the parties that the CBT account of approximately Twelve Thousand ($12,000.00) will remain undisturbed. (Transcript of proceedings of November 3, 1989, page 8.) It is fitting that the defendant should have the entire refund upon the parties' joint 1989 income tax return approximating $12,700.00 to equalize that taking.
The plaintiff has raised the claim that the defendant has filed no answer, cross complaint or claims for relief. Section 456 of the Practice Book does not require the defendant to file any pleadings seeking relief. The plaintiff's complaint has put in issue the questions of alimony, custody, child support, "damages", counsel fees and "such other relief as in equity may appertain hereto." Since the plaintiff's complaint has raised these issues, the defendant has the right to contest all of these issues and seek such contrary orders as he may choose. Tsopanidie v. Tsopanidie, 181 Conn. 248 (1980).
With respect to the issue of fault, the defendant admitted there were one or two occasions when he had had too much to drink. He denied the plaintiff's claims that he was the boss and everything had to be his way. It is clear, however, that the defendant is a very hard worker and extremely CT Page 2832 conscientious in the operation of his business. He had explained this to the plaintiff before the marriage and while they were going together. The defendant testified that he was spending less time at work now than when they were first married. Nevertheless, it is clear to the court that the defendant is more responsible for the breakdown of the marriage than is the plaintiff and that the breakdown is primarily by reason of the defendant's lack of attention and lack of sympathy to the plaintiff's needs.
The court finds, in addition to the foregoing findings of fact, as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. The defendant is at fault for the breakdown of the marriage.
With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. CT Page 2833 Valente v. Valente, 180 Conn. 528, 530
(1980).
The plaintiff's nonmonetary contributions to the family assets ought to be considered. In the recent case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300
at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
The court has considered all of the criteria of46b-81, 46b-82, 46b-84, 46b-62 of the General Statutes and46b-56a of the General Statutes regarding the joint custody of the minor children together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,183 Conn. 366, 368, this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232,234 (1982).
The plaintiff has an excellent education. At present it would appear that her diabetes is under control. The court recognizes her desire not to seek full time employment while the children are still in their tender years. However, she should certainly be able to obtain productive full time employment by the time the children are 17 and 15. The court is, therefore, terminating its alimony order after ten (10) years, nonmodifiable as to duration.
The court enters the following orders: CT Page 2834
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. There shall be joint legal custody of the two minor children with the primary residence of the children being with the plaintiff. The defendant shall have liberal contact with the children upon twenty (20) hours notice to the plaintiff. If either party plans to relocate farther than fifty (50) miles from their present residences, they must consult each other. The defendant shall have specific visitation with the children every other weekend from 9:00 a.m. on Saturday morning to 6:30 p.m. on Sunday evening. The defendant shall have visitation with the children one evening per week as agreed upon between the parties from 4:30 or 5:00 p.m. until 7:30 p.m. The parties shall alternate or share holidays as they shall agree, and the defendant shall have two (2) full weeks in the summer and one week during the children's winter vacation so long as he has vacation time with the children.
3. The defendant shall pay to the plaintiff by way of unallocated alimony and support the sum of $600.00 per week until the earliest to occur of the following events: the death of either of the parties, the plaintiff's remarriage, the plaintiff's cohabitation as defined and found by a court pursuant to the provisions of 46b-86 (b) of the General Statutes, or ten (10) years from date. Upon the happening of any of the foregoing events except the death of either of the parties, the parties shall return to court for appropriate orders of support for the minor children. The term of alimony shall not exceed ten (10) years which shall be nonmodifiable as to term. It is contemplated that the plaintiff shall have earnings and such earnings shall not be a basis of modification until they exceed gross annual earnings of $20,000.00. The plaintiff shall be entitled to the income tax exemptions for the minor children. There shall be a contingent order for wage withholding to secure the order of unallocated alimony and support.
4. The family residence located at 470 Shelton Road, Trumbull shall be the property of the plaintiff. The defendant shall quit claim all of his right, title and interest in said property to the plaintiff forthwith, and she shall be wholly responsible for the existing first mortgage upon that property and shall indemnify and hold harmless the defendant from any claim or demand thereon.
5. The property located at 2607 Broadbridge Avenue, Stratford, shall be the property of the defendant's free and clear of CT Page 2835 any claim of the plaintiff. The defendant shall be wholly responsible for the outstanding mortgages upon that property and shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
6. The defendant shall be wholly responsible for the outstanding business loan in the amount of $115,000.00 to Lafayette Bank Trust Company and shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
7. The defendant shall be wholly responsible for all bills to the date hereof pursuant to the pendente lite orders of the court.
8. The defendant shall be responsible for those liabilities set forth in exhibit A attached to his financial affidavit and shall indemnify and hold harmless the plaintiff from any claims or demands thereon.
9. The stock in the business known as Broadbridge Automotive Services, Inc. shall be wholly the defendant's free of any claim or demand by the plaintiff.
10. The defendant shall convey all of his right, title and interest in the boat slip at Oyster Landing to the plaintiff and the plaintiff shall be wholly responsible for the condominium charges and any other costs or expenses connected with said property from and after the date of transfer.
11. The real property at Palm Coast in Florida and Pootatuck Estates in Newtown shall be wholly the defendant's free of any claim or demand by the plaintiff.
12. The following assets shall be the property of the defendant free of any claim or demand by the plaintiff: the two boats and trailer; his IRA's, the 1957 Chevrolet, the Shearson Lehman Brokerage account, the 200 shares of IPCO Corporation, the checking account at Lafayette Bank Trust Company and the business loan made to Broadbridge Automotive Services, Inc.
13. The following assets shall be the property of the plaintiff free of any claim or demand by the defendant: the plaintiff's IRA, her pension with the Board of Education, her life insurance policy with Security Connecticut Life, the two United States Bonds, the CBT savings account, the Lafayette Bank savings account and the 1989 Mitsubishi Montero automobile. CT Page 2836
14. The defendant shall be entitled to the refund on the 1989 joint income tax return of the parties.
15. The defendant shall cooperate with the plaintiff so that she may have continued medical and hospital insurance coverage under his medical insurance plan pursuant to the provisions of 38-262d of the General Statutes at her expense for the maximum period provided by law. The defendant shall maintain such medical and hospital insurance coverage as he has for the benefit of the two minor children. Any uninsured or unreimbursed medical or dental expenses that may be incurred for the minor children shall be shared equally by the parties. The plaintiff shall have the benefit of the provisions of 46b-84 (c) of the General Statutes.
16. The tangible personal property at 470 Shelton Road, Trumbull, shall be the property of the plaintiff free of any claim or demand by the defendant except for the defendant's personal possessions, clothing and personal effects.
17. The defendant shall vacate the property at 470 Shelton Road, Trumbull, within thirty (30) days of the date hereof.
18. The defendant shall be responsible for the liabilities listed in the plaintiff's financial affidavit and shall indemnify and hold her harmless upon the same as follows: Master/Visa CNB (joint), school tuition in arrears, Dr. Etkind (balance after insurance reimbursement), Milford Pediatric $15.00, Standard Oil $415.61, Stop Shop Pharmacy $49.00, SNET $169.20, Sear's $73.30, L.G.B., Inc. $1,037.53, Town of Trumbull (car tax) $375.36, Eye Physicians Surgeons $10.00, Top Sanitation, United Illuminating, Pond Point Animal Hospital. Mini Med Hospital Center and Milford Hospital shall be paid by the defendant after medical insurance reimbursement. The remaining liabilities on the plaintiff's financial affidavit shall be her responsibility, and she shall indemnify and hold harmless the defendant from any claim or demand thereon.
19. The defendant shall maintain life insurance in the amount of $250,000.00 naming the plaintiff as irrevocable first beneficiary as long as he is obligated to pay unallocated alimony and support. At such time as he is no longer obligated to pay unallocated alimony and support, he shall name the minor children as equal irrevocable first beneficiaries for so long as he is obligated to pay support. CT Page 2837
20. The defendant shall make a contribution to the plaintiff's attorney's fees in the amount of $10,000.00 payable within ninety (90) days from the date hereof.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE