[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Narberth, Pennsylvania on August 22, 1966, and the parties have been residents of the State of Connecticut for at least 12 months next preceding the date of this complaint. There is one minor child issue of this CT Page 8002 marriage, Patrick McGlone, born May 9, 1976.
The plaintiff, age 51, is a High School graduate with 2 years of college. This was her first marriage and resulted in four children, three of whom are no longer minors. Issue of the marriage are Monica age 25, who lives at home and works in Stamford; Joe, age 20, who attends Franklin and Marshall University; Michael age 19, who will enter New York University in the fall; and Patrick who will attend Fairfield Prep in September. Plaintiff relates that at the time of the marriage both she and the defendant — husband were both addicted to alcohol. Plaintiff joined AA in 1973 and later Allinon. She has not had an alcoholic drink since 1973. The husband also ceased drinking alcohol from 1978 through 1990 but presently is once again drinking. The parties previously separated in 1984 and again in 1989.
The plaintiff's only work experience has been part time for her husband since 1986 and her present employment commencing August, 1990 at Fairfield University where she works in a secretarial capacity. The wife enjoys good health. She relates that her husband is a stock analyst who specializes in technical stocks and who also trades securities for his own account and for the account of others.
The plaintiff's financial affidavit reflects a net weekly income of $245.00 with weekly expenses of $1516.00, most of which are directly associated with the marital residence. She lists assets of $132,000.00 comprised of a $100,000.00 equity in the marital home, $30,000.00 in household furnishings and $2000.00 in jewelry and clothing. She lists no liabilities.
The husband, age 47, married the plaintiff when he was 22 years old. He relates that the marriage was stressful from the beginning and that "he did not know himself." He corroborated most of the wife's testimony and felt that it was the children who kept the marriage together to this point. He appeared genuinely sorry that this matter had come before the court and seemed to blame the break up on an excess of women, alcohol and money which "answered no questions and solved no problems."
The husband is in good health, albeit he is again consuming alcohol. He is a private stock analyst specializing in the area of technical stocks, a registered stock broker with NASDAQ and has traded securities for others but presently only trades securities for his own account.
The husband demonstrates an earning capacity of approximately $200,000.00 per year and believes that he can maintain this level in the future. However, he did express a CT Page 8003 concern in that his biggest and only commission client left him in 1989.
The husband's financial affidavit reflects a net weekly wage of $3174.00 with weekly expenses of $3,159.00. He lists $257,000.00 in total assets comprised of a $200,000.00 equity in the marital residence $30,000.00 in furniture, a 1986 Mercedes automobile valued at $20,000.00 and $2,000.00 in personal savings. He has a $320,000.00 term life insurance policy. He lists liabilities of $11,000.00 to the Internal Revenue Service, $6000.00 to the State of Connecticut, and an IRS audit of his pension account which could result in a $100,000.00 liability. He referred to his worst case scenario to be liabilities of $120,000.00.
Evidence was presented on both sides concerning the causes for the breakdown. It would serve no useful purpose to repeat that testimony. Suffice it to say that the plaintiff portrayed a picture of repeated infidelity and her lack of access to money. The defendant in major part agreed with his wife's substantive allegations. However, he portrayed himself as a victim of excessive alcohol women and money. He claimed to be a substantial and reliable financial provider. He felt the marriage was stressful from the beginning and that "he did not know himself as he was married at the age of 22."
The evidence presented established that the marriage has irretrievably broken down. Judgement may enter dissolving the marriage on that ground.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46-82 of the Conn. Gen. Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. Gen. Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572 (1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. CT Page 8004 Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valante v. Valante,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those non monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake,207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300
at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria, (46b-82 and 46b-81 (c))." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
The court has carefully considered all of the criteria and requirements set forth in Conn. Gen. Statutes 46b-56, 46b-62,46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. The parties shall cooperate to finalize a sale of the marital residence as soon as possible for the highest possible price, with no offer to be refused which is within 92 percent of the $479,000.00 listing price. After payment of a 5 percent brokers's commission, the present first mortgage, the two liens presently on said premises, and the reasonable and necessary closing costs, the net proceeds shall be divided 85 percent to the wife and 15 percent to the husband. The husband shall be responsible for all mortgage payments, real estate taxes and insurance until the house is sold. The husband shall be entitled to a credit for any reduction in the principal amount of said mortgage between the date hereof and the sale date which sum shall be deducted from the wife's share of the net proceeds and added to the husband's share. CT Page 8005
2. When and if the wife purchases a less expensive home in the $200,000.00 to 275,000.00 range and if the lending institution so requires the husband shall co sign the mortgage note and such other papers as may be necessary to enable the wife to consummate said purchase, but in no event shall his liability exceed the difference between the net proceeds the wife receives from the sale of the marital residence and $250,000.00.
3. The parties shall have joint custody of Patrick with physical custody to the wife and reasonable, flexible and liberal visitation rights to the husband.
4. The husband shall pay to the wife as alimony the amount of $525.00 per week until her remarriage, death or cohabitation under law, whichever event shall first occur.
5. The husband shall pay $150.00 weekly for the support of Patrick in addition to his school tuition, if any, until he reaches 18 years of age.
6. The husband shall maintain the existing $320,000.00 life insurance policy with the wife as irrevocable beneficiary as long as his obligation to pay alimony and/or support shall exist.
7. The defendant husband shall be responsible for all of the outstanding taxes incurred prior to the date hereof including but not limited to real estate taxes, federal income tax, Connecticut capital gains, business and or other taxes, and he shall indemnify and hold the wife harmless in connection with same.
8. The court makes no order regarding Patrick's after 18 years of age support and college education as there is no written agreement by the husband concerning same.
9. If available at her place of employment the wife shall carry medical and dental insurance for Patrick. The husband however, shall be responsible for all non reimbursable medical and dental expenses for Patrick.
10. All furniture and furnishings in the marital residence are awarded to the wife with the exception of the new set of Encyclopedia Britannica and glass coffee table which are awarded the husband.
11. The husband is awarded all of his personal effects and the Mercedes automobile. CT Page 8006
12. The husband shall contribute the sum of $3,500.00 toward payment of the wife's attorney's fees within four months from the date hereof.
13. The husband shall further pay to the wife 10 percent of his annual gross income which exceeds $195,000.00, in any calender year. Husband shall furnish wife verification of his gross income within 90 days following the end of each calendar year.
BALLEN, JUDGE