[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Denver, Colorado on October 2, 1976, and have been residents of the State of Connecticut for at least twelve months next preceding the date of this hearing. There are two minor children issue of this marriage, DeVer Foster Warner, born August 22, 1984 and Margaret Ramsy Warner, born January 12, 1987.
The plaintiff, age 41, is a high school and college graduate with a two year Applied Arts and Science Degree from Bennett College where she majored in theater. This is her first marriage and she enjoys good health with no apparent medical problems. The plaintiff worked as an actress in television and radio commercials during the first few years of the marriage while the husband was completing his education as a full time student. The wife last worked full time in 1984 but did occasional theatrical work until 1988. She has worked in the theatrical industry for almost 20 years but possesses no other employment skills and feels she has no employment opportunities other than in this field of endeavor. Her earned income reached a peak of $64,000.00 in 1984 when she was working full time but dropped to about $3,000.00 for part time work during the next several years. She relates that prior to 1984 she and her husband pretty much split all of the bills on a 50-50 basis. CT Page 8839 She admits that since 1984 the husband has paid for all the family bills.
The parties lived together in a New York City apartment for a year prior to marriage and approximately 3 years after marriage. They then moved to Fairfield, Connecticut in June of 1979 and purchased their first home in 1982 for $98,000.00. It was financed with a mortgage of $81,500.00 and a $17,500.00 gift from the husband's grandparents. This 97 Lee Drive property was sold in February, 1988 for $330,000.00. The present marital residence at 120 Long Meadow Road, Fairfield, Connecticut was then purchased for $560,000.00. The parties used the approximate $230,000.00 net received from the Lee Drive sale, obtained a $168,000.00 mortgage, received $80,000.00 in gifts from the husband's parents and the husband paid the remainder of the purchase price from savings. The husband's parents made other gifts which enabled the parties to pave the driveway for $5,000.00 and build a flagstone terrace for $11,000.00.
The plaintiff relates to having stopped work because of her daughter's illness, osteogenesis imperfecta, a disease which is manifested by brittle bones which are subject to multiple fractures. The daughter has sustained a dozen bone fractures prior to the date of this hearing. However, the daughter does appear to be improving and the plaintiff indicates a desire to now return to work in the theatrical field in order to "make ends meet" but can express no indication of where her income level would be at this time. The plaintiff has recently inherited $179,000.00 from her deceased mother which she will receive in January or February of 1992. The plaintiff had no assets prior to this marriage.
The plaintiff's financial affidavit reflects no weekly income. The husband has been paying all family related expenses and also giving the wife $300.00 weekly for food and other expenses. She lists weekly expenses of $1782.00 most of which are associated with the upkeep of the marital residence. She shows assets of $215,503.00 comprised of a one half interest or $174,000.00 equity in the marital residence, a one half equity in a Norwalk condominium which she values at $3,900.00, an Isuzu automobile valued at $9,250.00, a Volvo automobile valued at $500.00, $1000.00 in jewelry, $1,700.00 in bank accounts, $7,000.00 in a Screen Actors Guild Pension Fund, and an IRA of $8,691.00. She additionally shows the future estimated inheritance of $179,000.00 from her mother's estate. She lists liabilities of $13,650.00 on two credit cards.
The defendant, age 40, is a graduate of Hotchkiss Preparatory School, Brown University with a B.A., and a Master's Degree in Public and Private Management from Yale in 1981. He CT Page 8840 has been employed by I.B.J. Schroder Bank and Trust since 1988 and is presently a vice president in the United States Lending Group. He has been in line for a promotion but has been passed over twice.
Prior to this marriage, his first, the defendant owned a substantial amount of Warnaco stock which he has since sold for approximately $192,000.00. His parents and grandparents have given several monetary gifts to the couple which allowed them to buy their first home in 1982 and the present marital residence in 1988 for $560,000.00. The parties stipulate the home has a present market value of $550,000.00 in this depressed realty market. They further stipulate that a jointly owned Norwalk condominium has a fair market value of $65,000.00 with an approximate $58,000.00 mortgage.
The couple belong to the Pequot Yacht Club, The Country Club of Fairfield, the Weston Gun Club, the Aspetuck Fish and Game Club and the Pootetuck Fish and Game Club.
The husband is in good health, albeit a colitis-ulcer condition of three years duration which periodically flares up and results in rectal bleeding. The defendant feels the condition is stress related caused by the substantial expense of the new house, his daughter's illness and the fact that his marriage was in trouble. The husband admits he may have minimized his daughter's illness but feels the wife may have maximized same. He relates that his grandparents paid for his education with the exception of Yale Graduate School which he financed through the sale of his stock.
The defendant's financial affidavit reflects net weekly income of $1,943.00 with weekly expenses of $2,029.00. He lists assets of $341,865.00 of which $192,000.00 is his one half interest in the marital residence, $3,500.00 in the Norwalk Condominium, $10,750.00 in three motor vehicles, $15,580.00 in bank accounts, $69,485.00 in securities, $1,700.00 cash surrender value of an insurance policy, $7,753.00 in a profit sharing plan, $16,268.00 in his 401K Plan and an IRA account of $24,829.00. The husband is the vested beneficiary of an irrevocable trust which owns a $1,000,000.00 life insurance policy which is payable upon the death of both of his parents.
Evidence was presented on both sides concerning the causes for the breakdown. The couple had pursued marriage counseling and therapy on both an individual and joint basis. It would no useful purpose to repeat the testimony. Suffice it to say that the plaintiff portrayed a picture of change from "being a couple to not being together and the defendant is presently no husband and no father." The defendant husband feels the CT Page 8841 marriage broke down in 1988 because of stress and the parties constant wrangling. He feels both parties have contributed to the breakdown, he by "misreading, misdiagnosing and mistreating the situation" and the wife by being "angry non-stop and sarcastic." He denied being an absentee father.
The evidence presented established that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572
(1980)
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all the others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake, 207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988). CT Page 8842
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria. (46b-82 and 46b-81 (c))." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes46b-56, 46b-62, 46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. The parties shall cooperate to finalize a sale of the marital residence which shall be sold at the earliest possible date for the highest possible price. After payment of the existing first mortgage, brokerage commission and usual closing costs, the net proceeds shall be divided 60% to the wife and 40% to the husband. The wife may then use said funds to purchase a more modest home which she will be better able to maintain. If the lending institution so requires, the husband shall co-sign a mortgage note not to exceed the difference between the net proceeds the wife receives from the sale of the marital residence and $350,000.00. Each party is awarded all personal property owned prior to the marriage. The remaining personal property shall be divided by the parties. If the parties cannot agree on any item of personal property, it shall be submitted to family relations for mediation. If there is still no agreement it shall be submitted to the court which will retain jurisdiction over the personal property and all issues pertaining to the sale of the marital residence upon which the parties can not agree.
2. The husband shall pay to the wife unallocated alimony and support in the amount of $3500.00 per month and 20% of all income he receives from his employment over $100,000.00 and up to $200,000.00, whether by way of salary or bonus, until her death, remarriage, cohabitation under law or the expiration of seven years, whichever event shall first occur. Upon termination of this order the parties shall attempt to agree upon an amount for child support. Either party may request the court to order the amount of child support if they cannot agree on same at that time. It is noted that both parties requested unallocated alimony and support orders, albeit not in the same amounts or for the CT Page 8843 same periods of time.
3. The parties shall have joint legal custody of the minor children. The children shall make their primary residence with the mother with rights of reasonable visitation to the father, all as more fully set forth in a certain agreement by and between the parties dated July 26, 1991 which said agreement is incorporated by reference in this decision.
4. The husband shall provide medical and dental insurance for the benefit of the minor children comparable to his present insurance. The husband shall also pay all reasonably necessary uninsured medical expenses for said minor children.
5. The husband shall name the wife as primary beneficiary of a $300,000.00 term life insurance policy for so long as he is obligated to pay alimony and or support to her.
6. Each of the parties shall be responsible for the payment of the liabilities listed on their respective financial affidavits and shall hold each other harmless for any liability relating thereto.
7. The wife shall have the 1988 Isuzu car and the 1981 Volvo automobile. The husband shall have the 1983 Chrysler station wagon.
8. The wife shall have and retain her IRA account, Screen Actors Guild Pension and the inheritance which she will receive from her mother's estate and all other assets as listed on her financial affidavit.
9. The husband shall have and retain the I.B.J. Schroder escrow account but not including the February 1991 bonus, Advest Securities, the Schroder Profit Sharing Plan, the Schroder 401K Plan, his IRA, and all other assets as listed on his financial affidavit.
10. The February, 1991 bonus escrow shall be divided equally between the parties.
11. The husband shall have the Norwalk condominium.
12. Pending a sale of the marital residence, the husband shall pay the mortgage, taxes and insurance on same for the first three months from the date hereof. The parties shall each pay one half of said expenses for the next three months. The wife shall pay seventy-five per cent and the husband twenty-five per cent of the same for the next six months if CT Page 8844 she still resides in said premises. Thereafter the wife shall be solely responsible for the payment of said expenses provided the premises have not been sold and she still resides in same.
13. The parties shall be responsible for the payment of their respective attorney's fee with the exception that the husband shall pay three thousand dollars toward the wife's attorney fees within a period of six months.
BALLEN, JUDGE