[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Bridgeport, Connecticut on November 23, 1983, and have been residents of the State of Connecticut for at least twelve months next preceding the date of the filing of this complaint. There are no minor children issue of this marriage.
The plaintiff, age 51, is a high school graduate who is employed by Bridgeport Hospital as a medical transcriptionist. She enjoys apparent good health and this is her third marriage. She came to this marriage with three children, James 19, Dawn, 18, and Chris 11. She also owned a home at 55 Baker Street, Bridgeport, Connecticut which became the marital residence.
The wife's financial affidavit reflects a net weekly income of $279.86 from her job after deductions for taxes and insurance plus a temporary additional $80.00 from outside sources for a total income of $359.86. She has weekly expenses of $792.26. She lists assets of $21,525.00 which includes an equity in the marital residence of $13,000.00, $2,000.00 in a 1985 Mercury Cougar automobile, and $6,500.00 in a Chase IRA. She has several small creditors in the total amount of $1,632.00 as liabilities.
The defendant husband, age 49, is a high school graduate with two years of college and an associate's degree in accounting from the University of Bridgeport. He has held several positions including teller at Connecticut National Bank from which he progressed to branch manager, assistant credit manager of D.M. Reads and Howlands. He was also employed by City Trust Bank for eleven years as a branch manager. He left banking in 1987 and joined a Bridgeport attorney in the Quik Mortgage Company where he served as a mortgage broker and manager of the company. He left one year later to set up the CRF Financial Associates Company and is presently employed by the O'Donnell Real Estate Agency as a property manager. This is his second marriage and he is in apparent good health but is troubled by uveitis, and eye disease which he alleges may result in blindness.
The husband's financial affidavit reflects a gross weekly income of $475.00 with a net weekly income of $374.67. He CT Page 9876 claims weekly expenses of $550.00 and lists liabilities of $24,332.00 on several credit cards and assorted other debts. His assets are listed at $2,950.00 which includes two motor vehicles valued at $2,750.00, $100.00 in a checking account and $100.00 in business furniture and telephone equipment. He further shows a Citytrust Defined Benefit Plan as vested with value unknown.
Evidence was presented on both sides concerning the causes for the breakdown. It would serve no useful purpose to repeat the testimony. Suffice it to say that the plaintiff portrayed the husband as spending her money in a reckless manner which incurred substantial debt and encumbered her sole asset which was the marital residence. She also testified that the defendant departed from the marital residence for substantial periods of time on three separate occasions. He left twice in 1989 and again in January of 1991 until the present time.
The defendant claimed that he left the marital residence solely "because of economic pressures which she caused." He further stated the wife punched him several times and that he was assaulted by her then eighteen year old son.
The couple encountered two major economic problems. The wife owned the marital residence encumbered by only an approximate $6,000.00 first mortgage at the time of this marriage. Shortly after the marriage the husband arranged for a $43,000.00 mortgage to replace the existing mortgage so that a new master bedroom suite, laundry room and deck could be added to the house under his supervision as the general contractor. The wife appeared to feel that the husband profited from this transaction. The husband felt that he had obtained the best value for each dollar expended and in addition he claim to have performed substantial work himself without remuneration. The wife presently owns a more valuable home, albeit it is now encumbered by an approximate $37,000.00 mortgage rather than the former $6,000.00 mortgage.
The second financial problem encountered by the parties involved a $75,000.00 line of credit which they procured with the marital residence as security. The wife claims she did not realize the legal implications of this line of credit and that the husband should be responsible for the entire debt incurred. The husband pictured his wife as a willing participant who signed all of the requests for funds and expended in most part on herself, her parents, her children and the home. Testimony by the wife concerning expenditures charged to the line of credit was replete with "I'm not sure, I don't know or I can't recall." CT Page 9877
The evidence presented established that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486, (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572; (1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should taken into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Blake v. Blake, 207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on CT Page 9878 each of these statutory criteria. (46b-82 and 46b-81 (c))." Weiman v. Weiman, 181 Conn. 232, 234 (1982).
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes 46b-56,46b-62, 46b-81, 46b-82 and 46b-84 as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case including the City Trust Company first mortgage, the Society For Savings second mortgage or equity line of credit which has a present balance of approximately $60,000.00, the $1,900.00 withdrawal by the defendant from the joint account, and the defendant's liabilities of over $24,000.00 in individual and joint debts, in reaching the decisions reflected in the following orders.
1. The husband shall pay periodic weekly alimony of $100.00 to the plaintiff for a period of five years, or until her death, remarriage or cohabitation under law, whichever event shall first occur. A contingent wage execution may issue to insure said payments.
2. The parties shall each be responsible for all of the obligations listed on their respective financial affidavits and addendums thereto and shall hold the other party harmless from any liability in connection therewith.
3. The defendant husband shall secure his own individual insurance.
4. The defendant husband shall transfer title to the 1966 Dodge Coronet automobile to John F. Sullivan, the plaintiff's father and rightful owner of same.
5. The husband shall designate the wife as irrevocable beneficiary on a minimum of $25,000.00 in life insurance as long as his obligation to her hereunder shall exist.
6. The husband shall have no equitable or legal claim in or to the wife's home at 55 Baker Street, Bridgeport, Connecticut or to the furnishings contained therein.
7. The parties shall each be responsible for the payment of their respective counsel fees.
BALLEN, JUDGE