■ Violette McLarney, Respondent, v Walter McLarney, Appellant. — In a matrimonial action, the defendant father appeals, as limited by his brief, from stated portions of a judgment of the Supreme Court, Queens County (Graci, J.), entered October 5, 1981, which, *inter alia,* awarded custody of the parties' infant issue to the plaintiff mother. Judgment modified, on the facts, by deleting the second, third, fourth and fifth decretal paragraphs thereof. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements, and matter remitted to Special Term for a new determination on the issues of custody, visitation, maintenance and child support. After a two-day trial, Special Term granted custody of the parties' then six-year-old son to the plaintiff mother and authorized her to relocate to California. The court, however, was unduly swayed in reaching this decision by the defendant father's admitted predilection for gambling on athletic contests. The court said it was "obvious that the defendant is unable to support the plaintiff and child in New York considering his past performance, his debts and his gambling habit", and it "look[ed] * * * askance at defendant's hue and cry that plaintiff's move with the child to California would suddenly deprive him of visitation with the child and deprive him of the companionship and a say in the upbringing of the child. By his testimony the defendant has not demonstrated such interest in the child or in the child's welfare. Moreover, if defendant is sincere in his desire for visitation, California is but a little further distance from Las Vegas, where the defendant has often visited on his gambling junkets". The court's depiction of defendant lacks support in this record. There was, in fact, no dispute during trial that defendant not only cared for his son emotionally but also visited with him continually during the parties' separation. Although defendant apparently took, as well as made, bets on a daily basis over the telephone and borrowed as much as $10,900 from plaintiff's father and commercial credit companies for that purpose (most of which was paid back), there was no evidence that his $100 average weekly budget for this activity had in any way impoverished or otherwise harmed his family. He admitted four gambling trips to Las Vegas, but one was before he married

plaintiff and the other three were made in plaintiff's company. Defendant also admitted gambling junkets to Puerto Rico and Atlantic City — twice to the former and about once every 18 months to the latter. The record discloses that defendant is an employee of New York City earning approximately $17,000 annually plus an automobile allowance. He did not object to an award of custody to plaintiff but did object to any authorization for her to relocate to California, since his visitation rights would be significantly impaired. He testified that his son could reside with him in the two-bedroom apartment he had recently leased and shares with a male friend who has also separated from his spouse. Defendant's 24-year-old daughter was available to care for the child when necessary. Defendant also testified that he had ceased paying $50 in weekly support to plaintiff because she had been spending the money on herself while his son went ragged. Plaintiff, who is 14 years defendant's junior, is an Iranian whose post-high school medical assistance studies in this country had been interrupted in order to marry defendant. She had worked part-time during the marriage as a teacher's assistant at her son's school and subsequently took a clerical position with a publisher that paid $175 a week. Plaintiff testified that she was about to receive a $10 to $15 weekly raise in May, 1981 when she resigned voluntarily in order to go to California with her son. She said the reason for the trip was to help in certain affairs of a recently deceased brother, and that she had defendant's consent until their return was inadvertently delayed and defendant became impatient. Nevertheless, she told the court she wanted to remain in Los Angeles, where her mother and sister now lived, to share their two-bedroom apartment and enjoy their moral and financial support. Plaintiff said she had been offered a position with a medical equipment supplier that paid $1,200 monthly and took advantage of her fluency in Farsi and Hebrew. On the other hand, plaintiff admitted that she had been offered a position as a medical assistant in New York, but had turned it down because obtaining a baby-sitter would have been difficult and she did not want to sacrifice her evenings and Saturdays, even though the money she was making as a clerk was insufficient for her needs and that of the child. Plaintiff also testified that she had been residing rent-free in an apartment in a three-family home owned by her grandfather in College Point, Queens, but added, without any details, that she expected the residence to be sold and the new owner to charge her rent. Furthermore, none of plaintiff's evidence regarding defendant's abuse of her person, his gambling, or his discipline of their child, amounted to cause sufficient for a finding that he was an unfit parent or that he had in any way waived his right to a meaningful opportunity for visitation on a regular basis. In short, the record before Special Term afforded no basis for a finding of the exceptional circumstances requisite to a custody award that permits the custodial parent to relocate to a distant jurisdiction (see *Courten v Courten,* 92 AD2d 579). Accordingly, on remittitur Special Term must redetermine the issues of custody and visitation in light of the present record as well as any pertinent new facts demonstrated upon a hearing, if Special Term deems one warranted. Furthermore, as noted above, the challenged decision respecting maintenance and child support was apparently premised on Special Term's incorrect authorization for plaintiff to relocate upon its unwarranted assumption that defendant could not support plaintiff and their child. Since we are remitting the custody and visitation issues for redetermination, Special Term should also re-examine the child support award of $75 weekly and its failure to award maintenance to the plaintiff. Defendant's other points on appeal have been considered and found to be without merit. Gibbons, J. P., O'Connor, Rubin and Boyers, JJ., concur.