TERESA B. BLAKE v. BENSON P. BLAKE
(13257)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and HULL, Js.

Argued March 1—decision released April 26, 1988

*Wesley W. Horton,* with whom was *Susan M. Cormier,* for the appellant (defendant).

*Marilyn Paula Seichter,* with whom, on the brief, was *Donald J. Cantor,* for the appellee (plaintiff).

*Bruce Louden,* for the minor children.

SHEA, J. In this appeal from a judgment dissolving the marriage of the parties, the defendant husband, Benson Blake, claims that the trial court erred: (1) in permitting the plaintiff wife, Teresa Blake, to move the children to California when he was awarded joint custody of them; (2) in miscalculating the increase in the value of his assets during the marriage; and (3) in abusing its discretion in determining the financial orders concerning child support, alimony and distribution of the marital property. We find no error.

The parties were married in California on February 8, 1975. After briefly living in Massachusetts and Ohio, they lived in California from 1977 to 1983. All three

of their children were born in California. The family moved to Avon in 1983. The trial court, *Barall, J.,* rendered final judgment on July 27, 1987, dissolving the marriage of the parties. It awarded "joint custody" of the children, but ordered that the children "reside primarily" with the plaintiff, "who may remove the children to the San Diego area of California to live." The court granted liberal visitation rights to the defendant.

The principal financial orders were as follows: (1) the plaintiff was ordered to convey her interest in the family home in Avon to the defendant; (2) the defendant was directed to convey his interest in a lot in California to the plaintiff; (3) the plaintiff was awarded $1,200,000 as an additional share of the marital assets; (4) the defendant was directed to pay the plaintiff periodic alimony of $50,000 a year, only 50 percent of this award to be tax deductible by the defendant; and (5) the defendant was ordered to pay the plaintiff $200 per week for each of the three children as child support.

## I

The defendant claims that the trial court erred in permitting the plaintiff to move the children to California even though he has joint custody of them. First, he argues that the court should have required the plaintiff to demonstrate a compelling reason to justify relocating the children to an area far from their present home, where he lives. Second, in the alternative, he contends that the court abused its discretion in permitting the plaintiff to remove the children to California.

## A

The defendant maintains that there should be a presumption that moving a child far away from one joint custodial parent is not in "the best interests of the

child''; General Statutes § 46b-56 (a) and (b);[1] because such a relocation interferes with a primary goal of joint custody, ''a sharing of continued contact with both parents.'' *Emerick* v. *Emerick,* 5 Conn. App. 649, 656, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986). He relies on a series of New York cases for the principle that a joint custodial parent seeking to move children far away from the other joint custodial parent must demonstrate a compelling reason to justify the removal. *Weiss* v. *Weiss,* 52 N.Y.2d 170, 172, 418 N.E.2d 377, 436 N.Y.S.2d 862 (1981); *Daghir* v. *Daghir,* 82 App. Div. 2d 191, 192, 441 N.Y.S.2d 492 (1981), aff'd, 56 N.Y.2d 938, 940, 439 N.E.2d 324, 453 N.Y.S.2d 609 (1982); *Barie* v. *Faulkner,* 115 App. Div. 2d 1003, 497 N.Y.S.2d 650 (1985); *Bryan* v. *Bryan,* 99 App. Div. 2d 743, 471 N.Y.S.2d 650 (1984); *McLarney* v. *McLarney,* 96 App. Div. 2d 580, 465 N.Y.S.2d 274 (1983); *Courten* v. *Courten,* 92 App. Div. 2d 579, 580,

---

[1] ''[General Statutes] Sec. 46b-56. (Formerly Sec. 46-42). SUPERIOR COURT ORDERS RE CUSTODY AND CARE OF MINOR CHILDREN IN ACTIONS FOR DISSOLUTION OF MARRIAGE, LEGAL SEPARATION AND ANNULMENT. ACCESS TO RECORDS OF MINOR CHILDREN BY NONCUSTODIAL PARENT. (a) In any controversy before the superior court as to the custody or care of minor children, and at any time after the return day of any complaint under section 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction under the provisions of chapter 815o. Subject to the provisions of section 46b-56a, the court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. The court may also make any order granting the right of visitation of any child to a third party including but not limited to grandparents.

''(b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child.''

459 N.Y.S.2d 464 (1983); see also *Sydnes* v. *Sydnes,* 388 N.W.2d 3, 5–6 (Minn. App. 1986); *McAlister* v. *Patterson,* 278 S.C. 481, 482, 299 S.E.2d 322 (1982).

All of the cases cited by the defendant, however, involved a parent who sought a postjudgment modification of a joint custody decree and a substantial alteration of the other parent's visitation rights in order to relocate the children far away from where the original decree permitted them to live. *Weiss* v. *Weiss,* supra; *Daghir* v. *Daghir,* supra; *Barie* v. *Faulkner,* supra; *Bryan* v. *Bryan,* supra; *McLarney* v. *McLarney,* supra; *Courten* v. *Courten,* supra; *Sydnes* v. *Sydnes,* supra; *McAlister* v. *Patterson,* supra. In all of these cases the original judgment had contemplated that the parent with whom the child lived would reside within the same geographic area as the other parent. We have held that the burden of proving that a modification of custody is in the best interests of the child rests with the party seeking a modification. *Cookson* v. *Cookson,* 201 Conn. 229, 233–41, 514 A.2d 323 (1986). In the case at bar, however, we are not concerned with the modification of a previous judicial determination involving the place of the child's residence but with the initial resolution of the residence issue in the dissolution decree, which declared that the parent residing with the children may move them to California. We conclude that the postjudgment modification cases cited by the defendant are inapplicable to the present case.

The defendant also argues that a trial court may not allow a parent to relocate a minor child to a distant place when it also awards joint physical custody of the child to both parents. In the dissolution decree, the court ordered "joint custody of the children [Adam, Cooper and Morgan,] who shall reside primarily with the plaintiff mother, who may remove the children to the San Diego area of California to live." The defend-

ant contends that the court's determination that the plaintiff may move the children to California is inconsistent with General Statutes § 46b-56a (a), which provides: "For the purposes of this section, 'joint custody' means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents." The defendant maintains that the court's determination to award joint custody necessarily implied under § 46b-56a (a) that he maintain joint physical custody of the children, and that the court's relocation determination is legally erroneous in view of the statute's requirement "that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents." General Statutes § 46b-56a (a).

Section 46b-56a (a) also provides, however, that "[t]he court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody." The plaintiff in her proposed orders had requested that "[t]he parties shall have joint custody of their three minor children with the children to reside primarily with mother; that mother be allowed to remove the children with her to her proposed residence in California." Her proposed orders clearly implied that she agreed to joint legal custody, but not to joint physical custody. The defendant had proposed that "[t]he plaintiff and defendant should have joint legal and [physical] custody of the minor children." His proposal clearly implied that he sought joint physical custody only on the condition that the plaintiff and children remain in the general vicinity of Avon. "The defendant will continue to reside in the family home located . . . [in] Avon, Connecticut. Hopefully,

the plaintiff will take up residence in a location which will permit the parties to share physical custody of the children on a more or less equal basis.''

Both parents agreed upon joint legal custody, but they disagreed about whether the defendant should have joint physical custody. Under these circumstances, § 46b-56a (a) permits a court to award joint legal custody, but to award physical custody to one parent. The term ''joint custody'' used in the judgment in the present case implies that the court awarded joint legal custody, but its specific provisions concerning removal of the children by the plaintiff and visitation by the defendant make it clear that primary physical custody has been awarded to the plaintiff. We hold that a court under § 46b-56a (a) may award joint legal custody, when both parents agree, but at the same time deny joint physical custody, when both parents have not agreed to such an award, provided that the court finds that such an award is appropriate under § 46b-56a (b).[2]

B

The defendant also claims that the trial court abused its discretion in permitting the plaintiff to move the children to California. He contends that this decision was clearly erroneous in view of the fact that, when each of the children was asked whether he wished to move to California, each replied that he wanted to remain in Avon. The counsel appointed by the court

---

[2] ''[General Statutes] Sec. 46b-56a. JOINT CUSTODY. DEFINITION. PRESUMPTION. CONCILIATION. . . .

''(b) There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child or children of the marriage. If the court declines to enter an order awarding joint custody pursuant to this subsection, the court shall state in its decision the reasons for denial of an award of joint custody.''

to represent the childen believed that they should stay in Connecticut. The trial court found, however, that the defendant had coerced the children into opposing a move to California by convincing them "that they were going to lose their father." In light of this finding, the court did not abuse its discretion by refusing to accept as dispositive the testimony of children of five, seven and nine years of age. Nor was the court bound by the opinion of the children's counsel, despite the valuable function served by such counsel in custody hearings.

The defendant also contends that the trial court abused its discretion by relying upon the opinions of Walter Borden, a psychiatrist who was the custody evaluator chosen by both parents, and of Lawrence Beaudry, a family relations officer. He points out that the opinion of Borden was based primarily on information collected about one year before the court ruled and that the opinion of Beaudry was based on an investigation conducted from eight and one-half to sixteen months before the court ruled. In *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 302–304, 536 A.2d 978 (1988), the Appellate Court recently ordered a new hearing concerning a custody award, where the trial court had relied on a family relations officer's report that was thirteen months old at the time of its introduction into evidence, on the ground that it was not probative of "the *present* best interests of the child" at the time of the custody determination. (Emphasis added.) Id., 303. In making a determination of custody, this court also has concluded that the trial court is "bound to consider the child's *present* best interests and not what would have been in her best interests at some previous time." (Emphasis in original.) *In re Juvenile Appeal (Anonymous),* 177 Conn. 648, 664, 420 A.2d 875 (1979). We have declared, nevertheless, that "the court must . . . take account of the parents' past behavior, since it must

evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being." *Yontef* v. *Yontef,* 185 Conn. 275, 283, 440 A.2d 899 (1981).

The defendant does not challenge the qualifications of either Borden or Beaudry as expert witnesses in this case. The delay between their examination of each child and their testimony at the custody hearing simply affects the weight of their testimony rather than its admissibility. See *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 358–59, 294 A.2d 305 (1972). Our standard of review in domestic relations cases is a very narrow one. We will not reverse a trial court's rulings with regard to custody and financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did. *Timm* v. *Timm,* 195 Conn. 202, 210, 487 A.2d 191 (1985). The defendant had a full opportunity at the custody hearing to point out any deficiencies concerning Borden's or Beaudry's examination of the children, and has failed to demonstrate any substantial prejudice as a result of the delay between the time Borden or Beaudry interviewed each child and when custody was determined. We conclude that the trial court did not abuse its discretion in considering the testimony of Borden and Beaudry in making its custody determination. "It is . . . within the court's province to determine the credence to be given the expert's testimony and to properly weigh it in relation to the other circumstances in evidence bearing on the question in issue." *Bond* v. *Benning,* 175 Conn. 308, 313, 398 A.2d 1158 (1978).

The defendant also contends that Borden's examination of the children was cursory, and, therefore, that the trial court abused its discretion by relying upon this psychiatrist's testimony. Borden conducted an individ-

ual interview of the youngest child for only fifteen minutes, of the oldest child for forty-five minutes, and of the middle child for one hour. He saw them about one year before the trial, he never saw them with their parents, though he had conferred with each parent, and he never administered any psychological tests. The defendant further argues that Beaudry's testimony was "flawed." He claims that Beaudry should not have relied on certain negative comments made by Borden concerning the defendant's psychological outlook. He also maintains that Beaudry's conclusions concerning him are flawed because Beaudry relied on a remark allegedly made by Irving Frank, the parties' marriage counselor, that the plaintiff "was the more devoted and giving parent." In a deposition admitted into evidence, Frank denied that he had made this comment to Beaudry.

The defendant had an opportunity at the custody hearing to challenge the conclusions of Borden and Beaudry, who both testified in favor of allowing the plaintiff to move the children to California, as well as to produce other evidence significant to the custody decision. "Because the trial court must take into account both subjective and objective evidence of the causes of the breakdown of a marriage and of the various factors that go into a determination of the best interests of the children upon the dissolution of their parents' marriage; General Statutes §§ 46b-56 (b), 46b-81 and 46b-82; our review of trial court determinations is perforce limited . . . . It is a rare case in which a disappointed litigant will be able to demonstrate abuse of a trial court's broad discretion in family matters." *Yontef* v. *Yontef,* supra, 278–79. The defendant does not challenge the trial court's determination that the plaintiff should be the primary caretaker of the children. In his brief he concedes that "the plaintiff could be primary caretaker in Connecticut." He

contends, however, that the trial court abused its discretion by permitting the plaintiff to move to California when she "offered no reason other than the desire to be with her family" in California. The trial court did not abuse its discretion in concluding that the best interests of the children would be promoted by allowing the plaintiff to live near her family in California, where all of the children had been born and had lived until 1983, and by providing liberal rights of visitation to the defendant, whose financial resources were ample to enable him to exercise them.

## II

The defendant argues that the court erred when it determined that there was a $2,600,000 increase in the value of his assets during the marriage. On cross-examination, the defendant testified that he was worth $4,600,000 in 1979, and that his assets at the time of the hearing were valued at approximately $7,200,000, an increase of about $2,600,000.[3] The defendant now contends that 1975, the time when the parties married, rather than 1979, was the proper starting point for measuring the increase in the value of his property during the marriage. He also maintains that it was improper to measure the value of the assets in 1979

---

[3] The defendant testified on cross-examination as follows:

"Q. And that would leave you then with a net residue after taxes of about four million six hundred thousand dollars ($4,600,000) as a result of the sale to Hershey.

"A. Okay. . . .

"Q. And, so, if your total assets today including those two are about seven million two hundred thousand, would you agree with me that your estate has increased since your inheritance was liquidated to the amount of approximately two million six hundred thousand dollars?

"A. If you consider the net of the tax and so forth, well, let me think about that. I think what you're driving at is basically correct.

"Q. All right. And that increase took place during the time that you and your wife were living together, did it not?

"A. Yes. Well, I mean, no. Well, yes, we're still living together today."

after he had paid $2,000,000 in taxes that had resulted from a sale of stock. He argues that his assets were worth $6,758,346 in 1979 before he sold a substantial block of stock, and was subjected to capital gains taxation.

The defendant failed during the trial to submit any information concerning his net worth in 1975 after the plaintiff had introduced their 1979 and 1980 joint tax returns as a basis for computing the financial awards. He admitted on cross-examination that there had been a $2,600,000 increase in the value of his assets.[4] In view of the defendant's own admissions on cross-examination concerning the increase in the value of the assets during the marriage, we conclude that the trial court did not err in finding an increase of $2,600,000 for the purpose of a property division pursuant to General Statutes § 46b-81.[5]

---

[4] See footnote 3, supra.

[5] "[General Statutes] Sec. 46b-81. (Formerly Sec. 46-51). ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

## III

We must now review the financial orders in this case to determine whether there was an abuse of discretion, aside from the defendant's claim that the trial court erred in calculating the increase in the value of his assets during the marriage. In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. *Charpentier* v. *Charpentier*, 206 Conn. 150, 154–55, 536 A.2d 948 (1988).

The defendant contends that the trial court abused its discretion to assign property of either spouse to the other under § 46b-81[6] by awarding the plaintiff $1,200,000, as well as a lot in California, which had an undisputed value of $375,000. He also contends that the totality of the financial orders, including $50,000 per year in alimony, awarded pursuant to General Statutes § 46b-82,[7] and $200 per week for each minor child, awarded pursuant to General Statutes § 46b-84 (b),[8]

---

[6] See footnote 5, supra.

[7] "[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

[8] "[General Statutes] Sec. 46b-84. (Formerly Sec. 46-57). PARENTS' OBLI-GATION FOR MAINTENANCE OF MINOR CHILD. ORDER FOR HEALTH INSUR-

was an abuse of discretion. It is evident, however, that his primary argument is that the court erroneously applied the criteria set forth in § 46b-81 concerning the assignment of marital property. The defendant argues that the court did not properly apply the requirement of § 46b-81 that it consider "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." It is undisputed that the plaintiff brought only $10,000 into the marriage, that she did not engage in any significant employment during the marriage, and that she did not participate in the defendant's investment decisions. He maintains that there is no evidence that the plaintiff had anything to do with the "acquisition, preservation or appreciation" of his estate, which the court found to have increased in value by $2,600,000 from 1979 to 1987.

In *O'Neill* v. *O'Neill*, supra, 312, the Appellate Court held "that a determination of each spouse's 'contribution' within the meaning of General Statutes § 46b-81 includes nonmonetary as well as monetary contributions." In articulating its rationale, the court stated: "A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable

ANCE COVERAGE. . . .

"(b) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities." Id., 311.

The defendant argues that this court should overrule the holding of *O'Neill* v. *O'Neill,* supra, in this regard. He points out that, in 1978, Substitute House Bill No. 5084 proposed amending § 46b-81 (c) to add the requirement that in assigning property that the trial court shall consider "the contribution of the spouse as a homemaker to the family unit." That bill was passed in the House; 21 H.R. Proc., Pt. 3, 1978 Sess., pp. 1196–1209; but died in the Senate Judiciary Committee. Journal of Senate, April 6, 1978, p. 612. He also maintains that there is nothing in the legislative history of Public Acts 1973, No. 73-373, § 20, now codified as § 46b-81 (c), to indicate that the legislature intended to include the nonmonetary contributions of a spouse in homemaking and raising children as a factor in determining the division of marital assets. 16 H.R. Proc., Pts. 4, 7, 12, 1973 Sess., pp. 1461–94, 1928–94, 3048–62, 5914–23; 16 S. Proc., Pts. 3, 7, 1973 Sess., pp. 1389–91, 1406–21, 3254–58.

The Appellate Court in *O'Neill* v. *O'Neill,* supra, 309, acknowledged that "the legislative history [of § 46b-81 (c)] does not reveal any attempt to define the word 'contribution.' " It concluded, however, that "there were comments [in the statute's legislative history] indicating an intent to require a court to take into consideration all relevant factors necessary to make a fair determination concerning alimony and property settlements." Id., 310. It held that the nonmonetary contribution of a spouse was one such factor. Id., 310–12.

We need not decide whether "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates" includes

nonmonetary contributions. Sections 46b-81 (c),[9] 46b-82[10] and 46b-84 (b)[11] all require that the trial court consider the "station" of each spouse. The most pertinent definition of "station" in Webster, Third New International Dictionary, is "social standing." A person's social standing is strongly correlated to his standard of living, although other factors may be important as well. Our courts have frequently considered the standard of living enjoyed by spouses in determining alimony or in dividing marital property. *Whitney* v. *Whitney*, 171 Conn. 23, 27–29, 368 A.2d 96 (1976); *Tobey* v. *Tobey*, 165 Conn. 742, 747–49, 345 A.2d 21 (1974); *Stoner* v. *Stoner*, 163 Conn. 345, 350, 307 A.2d 146 (1972); *Morris* v. *Morris*, 132 Conn. 188, 191–94, 43 A.2d 463 (1945). "We cannot hold that the trial court, taking into consideration as it did the financial circumstances and standard of living of the parties, abused its discretion in ordering payments in the amount stated." *Morris* v. *Morris*, supra, 193–94. Our courts have also considered the parties' standard of living in determining child support payments. *Burke* v. *Burke*, 137 Conn. 74, 76–81, 75 A.2d 42 (1950); *Morris* v. *Morris*, supra.

In determining the assignment of marital property under § 46b-81 or alimony under § 46b-82, a trial court must weigh the "station" or standard of living of the parties in light of other statutory factors such as the length of the marriage, employability, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. Which spouse has primary physical custody of minor children is also a consideration in determining the division of marital assets. *Charpentier* v. *Charpentier*, supra, 154–56. The parties enjoyed a very high standard of living during their marriage. There is no ques-

---

[9] See footnote 5, supra.

[10] See footnote 7, supra.

[11] See footnote 8, supra.

tion concerning the defendant's present and future ability to meet these financial orders, or to acquire capital assets and income. The marriage lasted twelve years. The trial court was clearly concerned that the children should be able to enjoy the same standard of living in California as they had in Avon. It indicated that it awarded the lot and $1,200,000 to the plaintiff to enable her to build a home in California comparable to the $675,000 family home in Avon. In view of the parties' standard of living, the length of the marriage, and the needs of the children, we conclude that the trial court did not abuse its discretion in its awards of marital assets, alimony and child support.

There is no error.

In this opinion the other justices concurred.