[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on December 24, 1978 at Westport, Connecticut. They have resided continuously in the State of Connecticut since that time. There is one minor child issue of the CT Page 778 marriage, Sara Eve Keller who was born February 23, 1980.
The court has listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has carefully considered the criteria set forth in Connecticut General Statutes sections 46b-56,46b-62, 46b-81, 46b-82, 46b-84 and 46b-86 (b) in reaching the decisions reflected in the orders that follow.
The court has also weighed the holding of the appellate court in O'Neill v. O'Neill, 13 Conn. App. 300, 311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988) wherein the court said as follows:
 A property division ought to accord value to those non-monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Blake v. Blake, 207 Conn. 217, 230-31 (1988)
At the time of trial the plaintiff husband was 52 years old and the defendant wife 49. The plaintiff had a bout with cancer for which he was treated in 1979. He has had no reoccurrence. In 1987 he developed what he thought to be a heart problem. He is taking medication to reduce his blood pressure and to improve the flow of oxygen to his heart. He has been diagnosed with having gastroesophageal reflex disease. (GERD).
The defendant wife is in good health. She had surgery approximately three years before the time of trial. She suffered bouts of depression since the breakdown of the marriage. She sought counseling and, by the time of trial, was less in need of it.
Both parties are college graduates and have advanced degrees. The plaintiff obtained two degrees before this marriage. He has his Masters Degree and a 6th year certificate in Education. He spent two years at Bristol Hospital Institute where he received a degree in marriage and family therapy. He is working on his doctorate in CT Page 779 Education at Hofstra University. The plaintiff was a consultant in the field of human resources and development through much of the marriage and, at the time of trial, was employed by Miles Pharmaceutical where he trains doctors and others in communication skills. He receives a salary of $85,000 per year. He was the principal breadwinner during the marriage.
The defendant, who had her Masters Degree in Social Work also received two years of training at Bristol Hospital and trained at the Ackerman Institute. She became an approved supervisor of marriage and family therapy. The defendant is presently in private practice counseling individuals and couples in marital therapy. After her daughter was born she maintained a position in Stamford Hospital in her field and worked there for one year before beginning her private practice in which she has scheduled her work around the child's needs. The wife's earning capacity is approximately $40,000 per year.
The plaintiff brought no assets into this marriage other than some household furniture. The defendant owned shares of stock she received from her grandmother. Her parents assisted in paying her tuition at the Ackerman Institute while she was pregnant. The parties jointly own real property located at 5 Lilac Lane, Westport. The defendant's parents gave the parties $30,000 toward the down payment and the closing costs in connection with the purchase of the home in 1983. The purchase price was $185,000.
The parties agree that the fair market value of the home at the time of trial is $330,000. Both parties further agree that approximately $20,000 must be spent on repairs to place the property in resale condition. The plaintiff's parents lent the parties $10,000 which has been repaid.
Excluding their one-half interests in the real property, the plaintiff had approximately 18% of the total marital assets and the defendant 4% at the time of trial. The defendant also borrowed approximately $24,000 from her mother during the separation.
The court finds that there is requisite jurisdiction and that the allegations of the complaint are proven and true. The evidence presented at trial clearly established that the parties' marriage has broken down irretrievably. The plaintiff separated from the defendant in October 1989. His relationship with a fellow student contributed to the disintegration of the marriage. The parties discussed and attempted a reconciliation but in September 1992 CT Page 780 recognized that there was no hope of that.
Judgment may enter dissolving the marriage on the ground of irretrievable breakdown.
The following orders may enter:
A. Alimony and Child Support
1. The plaintiff husband shall pay to the defendant wife the sum of $2500 per month as unallocated alimony and child support until June 30, 1998. Beginning on July 1, 1998 the plaintiff shall pay as alimony the sum of $1250 per month until the death of the plaintiff, the death or remarriage of the defendant or her cohabitation pursuant to Conn. Gen. Stat. sec. 46b-86 (b) or 9 years from the date of the judgment, whichever event shall occur first.
2. In the event that the unallocated alimony payments terminate before the minor child is emancipated, the parties shall renegotiate the amount of child support in accordance with the child support guidelines in effect at that time. If they are unable to agree, the Superior Court of Stamford or any other court of competent jurisdiction shall determine the amount of child support.
3. A contingent wage execution shall enter.
B. Custody and Visitation
1. The parties shall share joint legal custody of the minor child and the defendant shall have physical custody of the child.
2. The plaintiff shall have reasonable and liberal rights of visitation with the minor child. These rights shall include, but not be limited to the times specified in this paragraph. The plaintiff shall have the child every other weekend from Friday evening to Sunday evening at 8 p.m.; one weekday evening; Father's Day, and each Christmas Day from 11 a.m. Beginning in 1994 and in subsequent even-numbered years, the plaintiff shall have the child for New Year's Eve and New Year's Day, this holiday being treated as me; July 4th, Columbus Day weekend, Thanksgiving Day and the next day. Beginning in 1995 and in subsequent odd-numbered years thereafter, he shall have the child on Presidents' Day weekend, Memorial Day weekend, Labor Day weekend and the Saturday and Sunday of Thanksgiving weekend. He shall have the child for three consecutive CT Page 781 weeks in August of each year for which the plaintiff shall give the defendant two months notice.
3. Beginning in 1994 and in subsequent even-numbered years, the defendant shall have the child on Presidents' Day weekend, Memorial Day weekend, Labor Day weekend and the Saturday and Sunday of Thanksgiving weekend. Beginning in 1995, she shall have the child on New Year's Eve and New Year's Day, the holiday being treated as one; July 4th; Columbus Day weekend; Thanksgiving Day and the next day. She shall have the child on Mother's Day, each Christmas Eve and Christmas Day until 11 a.m. and on all Jewish holidays.
4. Holiday visitation, Father's Day and Mother's Day visitation shall take precedence over any conflicting visitation right s.
5. The parties shall make every effort to coordinate such visitation so that it does not interfere with the child's school or extracurricular activities.
6. The plaintiff shall pay the cost of all transportation and incidental expenses incurred in connection with the exercise of his visitation rights.
7. The plaintiff shall be given reasonable notice of school or dance activities in which the child engages to which the public is invited so that he may participate or be present.
8. Either party wishing to change the weekend visitation schedule shall give the other six weeks notice.
C. Real Property
1. The defendant shall have sole and exclusive possession of the property located at 5 Lilac Lane, Westport, Connecticut until it is sold.
2. The property shall be sold at the earliest occurrence of the following: her death, her remarriage, her cohabitation pursuant to statute, June 30, 1998 or her decision to sell the property. The property shall be listed for sale no later than May 15, 1998.
3. The defendant shall have the right to obtain a home equity CT Page 782 line of credit not to exceed $30,000 in amount. The plaintiff shall cooperate fully in obtaining the home equity loan, co-signing it if necessary. The proceeds will be utilized to make all reasonable and necessary repairs to put the property in resale condition, and to pay the Visa credit card debt. The parties shall agree upon the repairs needed to place the property in resale condition.
4. The property shall be listed for sale at a price agreed upon by the parties. They shall accept any offer within 5% of the listng [listing] price.
5. Upon the sale of the premises and after payment of the first mortgage, the home-equity line of credit, the real estate commission, attorney's fees and customary closing costs, the defendant shall be entitled to the first $30,000 of the proceeds. Thereafter, the net proceeds shall be divided so that the defendant receives 68% of the proceeds and the plaintiff 32%.
7. The court shall retain jurisdiction over any dispute which arises in connection with the repairs to be made or the listing of the property.
8. The defendant shall be responsible for payment of the mortgage(s), taxes and insurance on the marital home until such time as it is sold. She shall be entitled to take all allowable deductions on her income tax return with regard to the real property.
9. Other than those repairs made to place the property in resale condition, the defendant shall pay the first $250 of any necessary repair. The defendant shall pay 57% of any cost in excess of $250 and the plaintiff 43%.
D. Personal Property
1. The plaintiff shall retain the CD stereo, the piano, the 21-foot San Juan sailboat, the VCR, the Sunfish sailboat, Keflex canoe and paddles, grandfather's desk, chainsaw, silver metal arc lamp, silver metal directional lamp, framed Japanese print, framed original etching, Rowantrees pottery dinner set, white sofa, framed posters in his possession, 2 leather and wood ottomans, Roneo reproduction machine and table cart, carving knife, 2 aluminum saucepans and covers, large aluminum saute pan, small aluminum fry pan, tiles and pottery candelabra.
2. The defendant shall retain the living room stereo set, CT Page 783 the grey sofa and love seat, coffee table, television, bed, framed posters, dining table and 6 chairs, futon, silver metal torch lamp, "Don Quixote" painting, armoire, and heavy aluminum fry pan with straight edges.
3. Records, tapes and CDs shall be the property of the party who owned them before the marriage. Copies shall be made of those purchased during the marriage and the cost shred equally by the parties.
4. The defendant shall retain her Keough plan and one-half the XOMA stocks.
5. The plaintiff shall retain the funds in his savings and checking accounts, his Keough and 401K plans and one-half the XOMA stocks. He shall retain his full rights to any retirement plan provided by his employer.
6. The defendant shall retain her automobile.
7. The parties shall divide their remaining personal possessions equally, retaining those they brought into the marriage. In the event they are unable to agree, they shall submit the issue to the Family Relatons [Relations] office for mediation.
E. Liabilities
1. Each party shall be responsible for the liabilities appearing on his or her own financial affidavit, and shall hold the other harmless and indemnified thereon.
2. The parties shall file a joint tax return for 1993. They shall share equally in any tax liability in excess of the $3500 shown on the plaintiff's financial affidavit.
F. Life Insurance
1. The plaintiff shall maintain all life insurance available to him through his employer for the benefit of the defendant and the child so long as he has an obligation to pay child support or alimony.
G. Medical Insurance
1. The plaintiff shall maintain medical insurance for the CT Page 784 benefit of the minor child.
2. The parties shall share equally in the unreimbursed medical and dental expenses of the minor child after utilization of the Health Spending Account.
3. The plaintiff shall cooperate with the defendant in obtaining COBRA coverage for her.
H. Counsel Fees
1. Each party shall pay his or her own counsel fees.
All other claims for relief not expressly addressed herein have been rejected.
Judgment may enter accordingly.
The court commends the attorneys for their clear and forthright presentation of the case.
Leheny, J.