[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court finds the following facts: The parties were married on July 19, 1982, in Bridgeport, Connecticut. They have resided in Connecticut during their marriage. They have not received financial aid from the State of Connecticut. They have three (3) children: Justin, born October 2, 1981. Aaron, born December 28, 1982, and Lauren, born October 1, 1986. Justin, 18, will graduate from private school in May. The two younger children also attend private schools. The parties are in their 50's and are in good health.
The court has listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-56, 46b-62, 46b-81,46b-82, and 46b-84 in reaching the decisions reflected in the orders that follow.
The court has also weighed the holding of the appellate court in O'Neill v. O'Neill, 13 Conn. App. 300, 311, cert. denied,207 Conn. 806, (1988) wherein the court said as follows:
 A property division ought to accord value to those non-monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Blake v. Blake, 207 Conn. 217, 230-31 (1988).
CT Page 3352
The court has jurisdiction to decide the issues.
At the time of the marriage, Mrs. Vangor was employed by a small mail order computer firm as a secretary and bookkeeper. During the marriage, she was primarily a homemaker. She arranged the children's activities and handled the family finances. In addition, she worked part-time at Taft School around 1991 or 1992, and later at Taunton Press. In 1996, she obtained a better position at Taunton Press and earned $14,803. In 1997, she earned $21,050. In 1998, she entered her present position as administrative assistant at Ashlar of Newtown, where she earns close to $34,000. From her gross wages, she contributes to a 401K and to a credit union account.
The husband has been a designer for his family's engineering firm which was started by his father in 1961. Since his father's death 10 years ago, his mother, Teresa Vangor, owns 42% of the stock. He and his brother, Gregory, operate the business with 2 to 4 employees. The defendant is vice president.
The court further finds that the marriage has broken down irretrievably. A principal cause is the husband's dependence upon alcohol. He was a "social" drinker at the time of the marriage, but his routine and the deleterious effects of alcohol increased after his father's death. The wife gave up a part-time evening job because she would find him inebriated when she returned home and she worried about his ability to care for the children. His condition led to arguments in which he would demean her. His drinking interfered with their relationship because he fell asleep after 3 or 4 drinks at night or became quarrelsome. His inebriation at home worsened over the several years preceding their separation. After he struck her on June 5, 1998, during an argument, she obtained a protective order. He left the home then and did not return. There was no evidence, however, that his drinking interfered with his employment responsibilities.
The parties felt secure enough financially to double the size of their home in 1987 for $80,000. Subsequently, they decided to enroll all three children in private schools. They received a financial "package" to assist them with expenses. The oldest child graduates from high school in May.
At some point, the wife, who had handled the family finances, turned them over to the husband after he stated "she always had her hand out." The husband, however, did not handle the finances CT Page 3353 well and fell behind on the mortgage payments. The family business encountered financial difficulties, and he received no income for 17 weeks. At that time in 1996, Mrs. Vangor was working part-time as a receptionist at Taunton Press, and she was the sole source of income. In order to meet mortgage payments, the defendant borrowed $10,000 on an A.T. T. Universal credit card without consulting with the plaintiff. This caused additional dissension between the parties when the plaintiff learned of it. The defendant also lent between $14,000 and $20,000 from an IRA account to Bangor Engineering. He claims he was repaid at the rate of $125 per week which was included in his paycheck but did not disclose these payments to his wife. He did not produce evidence to show that these payments were in fact made and the court cannot conclude that they were. His brother, Gregory Vangor, and his mother, Teresa Vangor testified as to the declining fortunes of Bangor Engineering and their belief that the business is about to fail. The court however, views these claims with skepticism since Mrs. Vangor would not permit the plaintiff's attorney access to corporate records.
During the pendency of this action the parties entered an agreement pendente lite. By the terms of that agreement of November 9, 1998, the defendant was to pay $309 per week in child support, pay the mortgage on the marital home and the liabilities of both parties as they appeared on their affidavits. He was also to maintain medical coverage for the parties' minor children. The plaintiff was responsible for utilities, maintenance and upkeep of the marital home of which she obtained exclusive possession.
On June 29, 1999, the defendant was found in contempt and ordered to immediately pay $2,214.31 by June 30 an to bring the mortgage current by July 20. He was also to pay $6,593.96 for the children's tuition at a rate to be arranged with the schools, and to pay the plaintiff $1,000 by July 28 to reimburse her for payments she made to the schools. Further, he was to pay $57.80 to the plaintiff if he did not pay a medical bill. On October 12, he was again ordered to pay amounts in arrears due the plaintiff for child support and mortgage payments. On each of these dates he was ordered to pay $500 in attorney's fees. At the time of trial he was in arrears in the amount of $415.46 in child support and further owed the plaintiff $573.52 in medical bills as well as $1,415 for a mortgage payment she made.
The plaintiff borrowed money from her mother to pay household bills, food, clothing and school expenses, and to purchase a car. CT Page 3354 She failed to list any loan from her mother on her financial affidavit of October 28, 1998. On a financial affidavit dated January 19, 2000, she listed the amount owed to her mother as $56,779. She began to borrow money in 1994 so not all these funds are a result of the defendant's failure to pay in accordance with the court's orders. In addition, the plaintiff purchased a car with approximately $20,000. While the court does not find this money to be a gift the court finds that the payment terms are more flexible than those of a commercial loan and that the plaintiff is under no duty, other than a moral one, to repay this debt immediately. She provided no evidence that she has made any arrangement to repay the funds.
The defendant borrowed $7,500 from his mother to help him pay his bills. His mother does not seek to have these funds repaid. Along with his mother and brother he also personally guaranteed a loan of $50,000 for Vangor Engineering. He claimed that the loan was being renegotiated so as to be paid back over a five year period by the corporation. His brother gave contradictory testimony that the family was planning to close the business in approximately 6 months because it was failing. The defendant is not actively seeking new employment outside the family business despite his brother's doing so. The court finds that the corporation is encountering a period of difficulty due to the number of corporate mergers involving their customers. Nevertheless, the court finds that the conflicting testimony and the failure to produce business documents were designed to paint as bleak a picture as possible of the corporation's future for the purposes of this trial. These factors lessened the credibility of the defendant's claim as to his income and the state of the corporation.
Accordingly the court finds that the credible evidence is that the gross receipts of the corporation had been halved from $1,157,344 to $667,408 between the years 1997 to 1998. Nevertheless, the defendant's income rose from $66,772 in 1997 to $82,116 in 1998 during this period of economic downturn. The court finds that were the corporation to cease business the defendant could find employment as a engineer.
For all the foregoing reasons the court enters the following orders:
 1. Dissolution: The marriage of the parties is dissolved on the grounds of irretrievable breakdown. CT Page 3355
 2. Custody: The parties shall share joint legal custody of the minor children. The primary residence of the children shall be with their mother. The father shall have reasonable and liberal rights of visitation. The parties shall alternate the major holidays each year and each shall have access to each child on that minor child's birthday. The father shall have the children for Father's Day and his birthday; the mother shall have the children for Mother's Day and her birthday.
 3. Child Support: The defendant shall pay $339 per week by immediate wage execution until the oldest child graduates from high school this year. Thereafter, the defendant shall pay the sum of $280 per week by immediate wage execution for the remaining two minor children. This latter amount shall be modified in accordance with the then applicable child support guidelines for the remaining minor child when the second child attains the age of 19 or graduates from high school whichever first occurs. These amounts are within the range of the child support guidelines based on the defendant's earning capacity of $1,600 per week.
 4. Alimony: The defendant shall pay to the plaintiff the sum of $300 per week as alimony until seven years from the date of the decree; or her death; or her remarriage; or her cohabitation pursuant to statute, whichever occurs first.
 5. Real Property: The parties stipulated that the fair market value of the marital home at 12 Hard Hill Road, Woodbury, is $219,000.
 As of January 21, 2000, the mortgage balance was $93,118.94.
 The defendant shall quitclaim his interest in the marital home at 12 Hard Hill Road, Woodbury to the plaintiff. She shall give the defendant a mortgage in the amount of $31,500 plus 6% interest to be paid at (a) her sale or refinancing of the property; (b) her death, remarriage or cohabitation pursuant to statutes, whichever first occurs.
 She is to sell or refinance the property no later than July 1, 2005, for the purpose of terminating the defendant's indebtedness on the mortgage. CT Page 3356
 Until the sale the plaintiff shall pay the mortgage, real property taxes and insurance and hold the defendant harmless thereon.
 6. Personal Property: The parties have divided their personal property to their satisfaction except for an item known as the "batik". Neither party provided any evidence as to its composition, its acquisition or its economic or sentimental value. In the event there is more than one and it can be divided each party shall obtain an equal number. In the event there is one batik or it is indivisible, or there is an odd number, the extra piece shall remain with the party having physical possession of it. The plaintiff shall retain title to the automobiles listed on her financial affidavit. She shall retain title to her 401K plans both at Ashlar and Taunton Press, her IRA and her checking and savings accounts. The defendant shall retain the stock he owns in Vangor Engineering and the remaining assets listed on his financial affidavit.
 7. Life Insurance: The defendant shall maintain the $100,000 life insurance policy he has through First Investors naming the plaintiff as beneficiary until his obligation to pay child support and alimony ceases. So long as available to him through Vangor Engineering he shall maintain the $10,000 policy he has naming the plaintiff as beneficiary until his obligation to pay child support and alimony ceases.
 8. Medical Insurance: The plaintiff shall provide medical insurance for herself and the minor children as available through her place of employment. Any unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychological and psychiatric expenses incurred on behalf of the minor children shall be shared by the parties as follows in accordance with the child support guidelines: 55% by the plaintiff and 45% by the defendant.
 9. Liabilities: The plaintiff shall be responsible for the liabilities which appear on her financial affidavit with the exception of the debt to Discover Card. She shall hold the defendant harmless and indemnified CT Page 3357 thereon. The defendant shall be responsible for the debts which appear on his financial affidavit. He shall hold the plaintiff harmless and indemnified thereon.
 10. Attorney's Fees: Each party shall be responsible for his own attorney's fees.
 11. Arrearages: The following monies are due to the plaintiff pursuant to the pendente lite orders:
 1. The sum of $1,415 to reimburse the plaintiff for mortgage payments made by her;
 2. Sums necessary to bring the mortgage current through February 28, 2000;
 3. The sum of $573.52 for unreimbursed medical and dental expenses; and
 4. The sum of $415.46 in child support owed through the date of the hearing.
 These amounts shall be paid within 90 days of the decree. The court retains continuing jurisdiction over this issue.
All other claims for relief not expressly addressed herein have been rejected. Judgment shall enter accordingly.
Sandra Vilardi Leheny, J.