[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dissolution action came to the court on February 23, 1999 and was tried to the court on April 4, 2000 when the parties appeared with counsel. The court finds that the parties were married in Priolla, Sicily, Italy on February 5, 1950. They have resided in the state of Connecticut since 1953. They have three adult children. Neither party has been the recipient of financial assistance from the state or any municipality. The court has jurisdiction to hear this matter.
The court has listened to and observed the witnesses and reviewed all the exhibits in the case. In addition, the court has considered the criteria set forth in Connecticut General Statutes §§ 46b-62, 46b-81
and 46b-82 in reaching the decisions reflected in the orders that follow.
The court has also weighed the decision of the Appellate Court inO'Neill v. O'Neill, 13 Conn. App. 300, 311, cert. denied, 207 Conn. 806
(1988) in which the court stated as follows:
 A property division ought to accord value to those non-monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid CT Page 6804 employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Blake v. Blake, 207 Conn. 217, 230-231 (1988).
At the time of the hearing, the plaintiff wife was 72 years of age and the defendant husband, 78. Both parties reported various health problems. The plaintiff underwent surgery in 1999 three times, for her knee, for her back and for removal of a cataract on her eye. She will undergo knee replacement surgery this year. She takes an antidepressant which has helped her, and she finds that her life has improved since the separation. The defendant suffers from gout, asthma, a hearing problem and cataracts.
The plaintiff, who was born and raised in the United States, graduated from high school. The defendant attended grammar school in Italy. He cannot write in English and relied on his wife and now his granddaughter to write out checks for him. He reads English on a limited basis. The parties met at the suggestion of friends who encouraged them to correspond. Eventually the plaintiff went to Italy to meet and marry the defendant. She returned alone to her family in Brooklyn, New York and found lodgings. The defendant joined her, and they both lived and worked in Brooklyn until they moved to Connecticut with their two-year-old daughter in 1953. In Waterbury they both worked different shifts in a button factory. After the plaintiff was laid off from her job in 1954 she did not work again until 1969. In agreement with her husband, she concentrated on raising their children and caring for the home.
Both parties worked hard and lived frugally. The husband held full-time employment in a factory. In addition, he worked part-time as a landscaper in 1954. When he was laid off temporarily from his principal job, he worked as a landscaper and made enough to support the family. For 20 years he worked at Superior Steel in Cheshire operating a grinding machine and earning $10 per hour. When he retired at age 65 in 1985 he received $14,000 in severance pay since he had no pension. He receives a small pension from Italy for his service in the Italian Army.
In 1969 the plaintiff returned to part-time employment in an electronics firm. She remained there for two or three years. She gave her husband her paycheck and had no discretionary money of her own to spend. CT Page 6805 Her husband took her shopping and paid for items she chose. She then worked at a telephone answering service for nine years. Although she had a driver's license the family had only one car. Therefore, the defendant, who worked the afternoon shift, transported her so that she could be home in time for the children's return from school. She contributed to the household expenses, to the cost of special family gatherings, and for "extras" for the children and grandchildren which the defendant would not purchase. For example, she bought her daughter a prom gown and graduation dress for which the defendant would not pay. She also saved some of her earnings.
In February 1980 she started her own answering service in the living room of the marital residence. She installed telephone equipment and a bed for the night operator. During the time the plaintiff ran the business, the defendant paid for utilities and cleared snow from an employee's parking area. From her earnings the plaintiff paid for all food, cable television and for what she believed her children needed. She assisted her son financially when he suffered a mental breakdown. She and the defendant raised their granddaughter from the time the child was 14 years of age. Their grandson lived with them on weekends when his parents were involved in their own dissolution action. With her income the plaintiff contributed to an IRA account and a CD account and bought savings bonds. Her average gross earnings were $50,000 per year and her net earnings approximately $35,000. She sold the telephone answering service in 1992 for $51,000. Under the terms of the sale she received $1,000 per month until paid in full.
The marriage of the parties broke down irretrievably over the years. The parties remained together until their granddaughter went to college. They both agreed that, at trial, they would not recite their marital differences. Their relationship had been troubled for years and subject to many disagreements. A sticking point for the plaintiff was her husband's control over financial matters and his unwillingness to share financial decisions with her. For instance, the plaintiff has not learned what he did with the $14,000 in severance pay he received or with any income he earned in his landscaping business after his retirement. The defendant kept his income separate from the plaintiff's when she owned the answering service. He traveled to Italy frequently to visit relatives and family property. After his father died, he continued to go to Italy where his father owned a small stone house. It is unoccupied, and the property does not include much land. The defendant denies he has an interest in the property. He does not know its value. He has made repairs to the roof and has stayed there when he visited Italy.
The defendant invested in several pieces of real property throughout the marriage. He did not consult with the plaintiff in most cases and she CT Page 6806 was not always privy to the way proceeds of sales were used. He purchased the following:
1. property on Clock Avenue, Waterbury, held for the benefit of the parties' son, Carmelo. Both parties agree that this property is not a marital asset.
2. 19 Sunset Avenue purchased with an $8,000 cash deposit and a $7,000 mortgage.
3. 22 Sunset Avenue, a two-family house. The parties occupied one apartment as their residence. The plaintiff is a joint owner. The parties paid $12,500 in 1965 and paid off a mortgage of $12,500. It yields rental income of $600 per apartment. The market value is estimated at $75,000.
4. 10 acres in Watertown purchased for $22,000 in cash. The property is basically an interior lot with a 50 foot access strip. The parties have agreed to market that at $67,500 and share equally in the proceeds.
5. a house in Wolcott purchased for $12,000 and sold in 1968 for $18,000. Some of the proceeds from the sale paid for a family trip to Italy in 1969.
6. a 3 family house in Waterbury purchased for $12,000 in cash in 1972 and sold in the mid-1980s for $46,000. This property was owned jointly with a son who received one-half the proceeds.
7. a two-family house purchased for $10,000. When it was destroyed by fire, the defendant received insurance proceeds in the amount of $15,000.
8. a lot in Plymouth purchased for $2,000 in cash and sold for $15,000.
In addition, the defendant owns 4 burial units at Calvary Cemetery.
The parties separated in May 1999 when the plaintiff moved from 19 Sunset Avenue to a senior complex where she presently resides. She pays $295 per month in rent, an amount which is modifiable annually. When she left the marital home, she took a microwave and china closet. She left the remainder of the household furnishings. She seeks only to have her photograph album with photographs of her parents. She cashed in her IRA and spent approximately $6,000 she held for her son Carl and her granddaughter Christina. While they have demanded the restoration of the money, she will not return it as she believes it was "owed" her and she "took it back." She receives $103 per week in Social Security income and $13 per week from her IRA. CT Page 6807
The defendant receives $196 per week in Social Security income and an additional $48 per week in pension and interest. He has a money market account and a savings account.
Based on the foregoing, the following orders shall enter:
Dissolution: The marriage of the parties is dissolved on the grounds of irretrievable breakdown.
Alimony: The defendant is to pay to the wife the sum of $191.50 per week as periodic alimony until either party dies or until she remarries. This amount shall be modified as follows: in the event the income of either party changes, that party shall notify the other immediately sending documentary evidence of that change to the other. Upon notification, the defendant shall pay to the plaintiff that amount which is equal to one-half the difference between their respective incomes. The purpose of this provision is to equalize the annual incomes of the parties.
Property Division:
(a) The marital residence located at 19 Sunset Road, Waterbury is to be sold and the net proceeds divided equally between the parties. "Net proceeds" is described as the normal and customary closing costs and fees. In addition, before the net proceeds are disbursed, the defendant is to be reimbursed for real estate taxes, homeowners insurance and other ordinary expenses which he paid in connection with the property after June 29, 1999, pursuant to the order of the court, (Pellegrino, J.). In the event any late charges or penalties were assessed for these payments, those charges are to be deducted from the defendant's share of the proceeds.
(b) The plaintiff shall quitclaim her one-half interest in the property at 22 Sunset Road, Waterbury to the defendant. The defendant shall pay the plaintiff $37,500. He shall be entitled to receive the rental income from the property. This income will continue to be included in his income for the purposes of alimony calculations. This income further shall be considered to be at least $1000 per month notwithstanding the fact that he may be occupying one unit.
(c) The Watertown property shall be listed for sale within 30 days. When it is sold, the net proceeds after the deduction of customary closing costs, shall be divided equally between the parties.
(d) The property on Clock Avenue, Waterbury is not a marital asset and is to be held in trust for the parties' son, Carmelo. CT Page 6808
(e) The defendant shall transfer one-half of his personal assets located outside of the United States, if any, to the plaintiff.
(f) The defendant shall transfer ownership of two burial units at Calvary Cemetery to the plaintiff.
(g) The defendant shall give $15,000 to the plaintiff within 30 days of the decree.
All other claims for relief not addressed herein have been rejected.
Judgment shall enter accordingly.
 ___________________, J. SANDRA VILARDI LEHENY