[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a postjudgment matter regarding the contemplated relocation of the plaintiff to California with her present husband and the minor child, Robert, issue of the litigants' marriage. The court, Arena, J., dissolved their marriage Jan. 30, 1990, and, pursuant to the agreement of the parties, awarded joint custody of Robert to the parties with primary physical custody to the plaintiff. Mr. Ireland remarried in 1993 and the Zakars were married in November of 1995, more than three months after the subject motions were filed.
In July of 1995, the plaintiff informed the defendant of her intentions to move to Folsom, California with her husband, Steven Zakar, and Robert. At the time she informed the defendant, she had already given notice to her employer of her intention to leave August 10th and had purchased airline tickets for herself and her son for an August 11 departure.
Testimony from Steven Zakar's employer showed that Mr. Zakar is under a one-year contract, renewable for an additional year, in connection with his employment as a computer scientist for Barquin and Associates, an entity under contract with IBM and their Southwest Integration Group. Mr. Zakar is the principal of his own corporation, Spontaneous Combustion, Inc., and it is actually Spontaneous which is under contract with Barquin with Steven Zakar as sole employee of Spontaneous. Ramon Barquin testified that his company is satisfied with Steven Zakar and his work and that he hoped to renew the contract as long as Zakar's effectiveness continues. The work involves contact with some 80 Barquin employees or subcontractors, as well as the IBM people. While some of the work can be performed by way of electronic communications, face-to-face interaction will also be necessary. To date, Mr. Zakar has been spending most of his time in California with weekend trips back to Connecticut.
Mr. Ireland is employed in Connecticut and has enjoyed weekend visits with his son three out of every five weekends, per the agreement between the parties of August of 1995. He did have a period of unemployment since 1990 and states that he once CT Page 1306 turned down a job in Chicago, in part because it would keep him from having visitation access to Robert. The defendant's parents reside in Woodbridge and Robert often visits with his father, grandparents, cousins and friends in that town. Mrs. Zakar's mother resides in East Haddam and most of her siblings also reside in Connecticut.
The evidence amply supports the court's conclusion that both parties are not only good parents, but exceptionally fine parents. Each of the parties participate in activities with Robert which provide emotional and intellectual growth as well as quality bonding between each parent and child. Also, there is no evidence to indicate the remarriage of the parties has had a deleterious effect on Robert. Rather, it is fair to say that the new spouses probably add greater stability to Robert's life, although in the case of the Zakars, undoubtedly it was the pending relocation controversy which cemented their legal relationship. The court has ruled during the course of the hearing that fitness is not an issue in these proceedings. And in the final analysis, this court concludes that Robert is blessed with caring, sensitive parents who work tirelessly to nurture and support their son. Understandably, both parties were left with bitterness associated with the breakup of their marriage and the financial burdens attached, but each has done a reasonably good job in separating those concerns from the parenting process. Mr. Ireland complains that Mrs. Zakar recently has sought to alienate the child from Mr. Ireland and there was evidence to indicate this may be ongoing. (For example, when Mr. Ireland telephones his son, Mrs. Zakar will say, "Robbie, Mr. Ireland wants to speak with you.") Similarly, Mrs. Zakar is resentful of Mr. Ireland's retention of his son after visitation while seeking to prevent her departure for California. Despite these areas of contention, the parties have worked remarkably well avoiding their differences in their day-to-day interaction with Robert.
There are two motions before the court for consideration. The first is a Motion to Enjoin and Restrain (the plaintiff's move with Robert to California) filed by the defendant, and the second is a Motion for Permission for Plaintiff to Reside in California with the Minor Child filed by the plaintiff. The paramount question before the court is what is in the best interest of the minor child.
In undertaking an analysis of the factors before the court, the court views the conflict as one in which the divorced parents CT Page 1307 and minor child face a disruption of their interrelationships because of a job opportunity available to a third party, Steven Zakar. Compelling though his employment needs may be, the question is whether they should take priority over the child/parent relationship of Robert, Mrs. Zakar and Mr. Ireland. The focus, then, should be, and is on the interest and needs of Robert, not of Mr. Zakar. Considering the ultimate welfare of the minor child, the court must conclude that Robert's continued bonding with his father has a much higher priority. Moreover, the court looks to the fact that the California move would effectively isolate Robert not only from his father, but also his grandparents — both paternal and maternal, his many cousins, and friends made in Westbrook and Fairfield, all of whom reside in Connecticut. The court is unable to find that Mr. Zakar's California employment and the resultant relocation of Mrs. Zakar and Robert outweighs the myriad relationships which would be adversely affected by such a move. That Robert and his father have bonded successfully is especially noteworthy in light of Mrs. Zakar's understandable but inexcusable attempt to alienate her son from her former husband. An example of this attempt is demonstrated in the fact that Mrs. Zakar signed Robert up for little league, soccer and rollerblading on the weekends, thereby cutting into Mr. Ireland's visitation time, causing him to have to stay overnight in a motel in Westbrook or face the prospect of long drives from Westbrook to Fairfield more than once a weekend. In order to make the most of an adverse situation, Mr. Ireland volunteered to serve as coach for his son's team. No evidence submitted compels the court to believe that the contemplated move would provide any appreciable advantage to the minor child, e.g., the move is not being sought for health or economic reasons relating directly to Robert or his mother. Significantly, Mrs. Zakar does not intend to seek employment in California, which means she would have more free time to be with Robert while avoiding the need for day care, but it is unclear to the court why this same benefit cannot apply if she remains here in Connecticut.
Counsel for the plaintiff urges the court to view the case in the context of the holding in Blake v. Blake, 207 Conn. 217
(1988), wherein the court at the time of the originaldissolution and orders made the distinction between joint legal custody with primary residence and joint physical custody. In that case, the court awarded joint legal custody with primary residence with the mother together with the recognized right for her to remove the children to California. The supreme court CT Page 1308 upheld the trial judge's order with respect to the planned move and noted it was dealing with a determination made at the initial resolution of the case, not a modification. The plaintiff's counsel suggests that the Blake case implicitly recognizes the New York or New Jersey standards when ruling on these motions and this court is urged to apply them in this case. To restrain the move in this case, it is argued, would ignore the importance of the primary residence portion of the order. Conn. Gen. Stat. § 46b-56a permits the court to award joint legal custody without awarding joint physical custody where the parties have agreed. This occurred in the present case. However, establishing primary residence with one of the parties is not tantamount to awarding sole custody, as plaintiff would urge. And joint custody specifically provides for joint decision-making. C.G.S. §46b-56a(a). When judgment was entered it may reasonably be assumed that the parties and the court expected the minor child would reside within the jurisdiction of this court. Indeed, that has been the situation here for the past six years. The relocation of the minor child three thousand miles away will have a dramatic effect on the defendant's ability to share in decision-making and it then becomes a matter for judicial review, as both parties acknowledge by virtue of the present motions. Having primary residence with one party or the other does not give that party an advantage. Nor does it imply a change in custody in which fitness becomes an issue. The court does not have before it a motion to change the custody orders entered January 30, 1990.
The court cannot find any cases where Connecticut has adopted the New York or New Jersey tests for relocation, but even if this court were to adopt New York's standard that a joint custody parent seeking to relocate children far away from the other joint custodial parent must show a compelling reason to warrant judicial authorization for the move, no compelling reasons were set forth during the hearing on the motions in this case.
This court concludes that relocation in joint custody cases must be viewed on a case by case basis with attention to any manifestations of what was contemplated by the parties and the court at the time the original orders were entered, the impact the relocation will have on the minor child, the history of the nonrelocating parent and the child's relationship, the history of the relocating parent and the child's relationship, the input from the attorney for the minor child, the Family Relations Report and the reasons offered by the relocating parent for the CT Page 1309 move. Additionally, the burden of establishing the benefits of the move must rest with the relocating parent. Underlying all of these factors is the premise that the court must base its decision on what is in the best interest of the minor child.
The court finds the evidence against the move is overwhelming, and, when viewed in conjunction with the report of the family relations officer, and the report of the attorney for the minor child, further finds that Robert's relationship with his father will be unalterably eroded and diminished by his removal to California and that it is not in the minor child's best interests.
Accordingly, the defendant's Motion to Enjoin and Restrain the plaintiff's removal and relocation of Robert Ireland to the State of California is granted and the plaintiff's Motion for Permission for Plaintiff to Reside in California with the Minor Child is denied.
Stanley, J.