[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This fully contested dissolution of marriage action, having a return day of November 7, 2000, was tried over ten days from September 24, 2002 to November 7, 2002. Trial briefs were submitted on November 19, 2002. The parties were married on July 2, 1994 and one party has resided continuously in this state for one year prior to bringing this action. There is one minor child issue of the marriage, Nathan A. Browning, born March 28, 1997.
The plaintiff wife is 36 years of age and she is a high school graduate. This is her second marriage and she has two children from her first marriage. The plaintiff met the defendant in 1992 at a manufacturing plant where they both were employed. The defendant was the plant manager and the plaintiff was a factory worker. She stopped working soon after the marriage in order to take care of her two children, and the defendant's two children in the marital home locate at 490 Pendleton Hill Road, North Stonington. The plaintiff's children were five and seven, and the defendant's children were six and fifteen when the parties married. In 1998, the plaintiff opened a day care center in a renovated garage adjacent to the marital home. She operated this day care center for approximately three years and she provided child care during the day and over nights. The average income from this business was approximately $400 per week. The day care closed in 2000 and is not currently licensed. The plaintiff has not worked since the day care center closed.
The plaintiff has received medical attention for mental and physical health issues on several occasions during the marriage. On these occasions, the defendant has assisted the plaintiff in her recovery. Unfortunately, the plaintiff's health has deteriorated since 2000. She presently suffers from a gastrointestinal disorder, depression, and anxiety. She has been diagnosed as having attention deficit disorder. The plaintiff is also suffering from stress, caused in part by this dissolution of marriage action. The plaintiff's psychiatrist, Dr. Awwa, testified that the effect of stress upon the plaintiff results in her CT Page 15973 being unable to work. Assuming that plaintiff's stress is reduced upon the conclusion of these proceedings, Dr. Awwa expects that the plaintiff will be able to return to work in about a year. The court finds this testimony credible. Because of the plaintiff's inability to work, the court is not able to attribute a present earning capacity to her.
When the plaintiff married the defendant, the only significant asset she owned was a home in Moosup, Connecticut. This home was rented to a tenant during the course of the marriage and was ultimately sold in December 2000. At the time of the marriage, this property was encumbered by FHA mortgages in the approximate amount of $51,000. These mortgages were paid off in October 1997 when the property located at 490 Pendleton Hill, North Stonington, was refinanced. The proceeds from the sale of the Moosup property were approximately $83,500. These proceeds were spent as follows: $50,000 was used to pay off a mortgage upon property owned by the defendant located at 387 Pendleton Hill Road, $14,000 was used to repair the roof of the property located at 490 Pendleton Hill Road and $1,500 was paid as a retainer for the guardian of the minor child. The balance of the proceeds, approximately $18,000, was applied to the mortgage payments for the property located at 490 Pendleton Hill Road, where the plaintiff and Nathan have resided during the pendency of this action. In summary, the premarital debt against the Moosup property was paid off during the marriage and all of the proceeds from the sale of this property were utilized for the benefit of both parties.
The listing of assets on the plaintiff's financial affidavit is actually a catalogue of the marital estate, since almost all of the assets are in the defendant's name alone. The only assets actually owned by the plaintiff are her interest in 490 Pendleton Hill, owned with the defendant, a 1992 Cavalier valued at $1,500, a checking account of $260, and household furnishings which she did not value. The plaintiff's affidavit shows liabilities of $51,000 which includes attorney's fees of $30,000 and credit card debt of approximately $18,000.
The defendant husband is 51 years of age and he has a bachelor's degree in industrial management. His health is good. This is his third marriage and he has a child from each of his prior marriages. He is presently employed as a manager of a grocery store in Mystic. He has gross weekly income of $1,000 per week and, in addition, he receives a bonus which averages $96 a week for total income from employment of $1,096 per week. His net income from employment is $794 per week. On his financial affidavit, the defendant has valued his assets at $1,058,444. The list of assets does not include his antique furniture, inadvertently omitted from the affidavit. that has a value of $60,000. At the beginning of this case, the defendant took $22,000 from marital property to make payments CT Page 15974 on his attorney's fees. The defendant's listed assets include two IRA accounts, in the approximate total amount of $18,000, which were recently liquidated with the approval of the court. The proceeds from the liquidation were used to reinstate the mortgage upon 490 Pendleton Hill Road that was in default and in foreclosure. The defendant also has a 401k account, through his employment, that was accumulated during the marriage. The value of this account as of December 31, 2001 is $22,245.80.
The defendant's affidavit shows total liabilities of $102,818, of which $72,677 is for attorney's fees and a loan for attorney's fees, $14,600 is for back Federal taxes, and approximately $13,000 is credit card debt.
The defendant owned 490 Pendleton Hill Road for almost 20 years prior to meeting the plaintiff and it was placed in joint names during the marriage. This property has a value of $342,000 and is encumbered by a mortgage in the amount of $153,000. The mortgage payments are approximately $1500 per month. The mortgage amount includes $51,000 used for the payoff of the two mortgages upon the plaintiff's home in Moosup. This property was valued in 1997 at $215,000 on a mortgage loan application. In addition to the former day care facility, this property has an apartment which presently generates $162 a week in rental income. The continuation of this rental income is uncertain so it was not utilized in computing child support.
A substantial portion of the marital estate consists of property which the defendant inherited from his father, who died approximately one year before the parties married. This inheritance included two houses. The defendant currently resides in one of the house which is located at 387 Pendleton Hill Road, North Stonington. It was valued in the inventory of the plaintiff's father's estate at $173,100. It is unencumbered and presently has a value of $270,000.
The defendant also inherited a house located in Charlestown, Rhode Island. This property generates rental income of approximately $240 per week. The court finds that the reasonable expenses for this property are approximately $170 a week; this results in a net rental income of $70 per week. The court also finds that the depreciation deduction for this property shelters the net rental income from taxation. This property is unencumbered and has a present value of $500,000. In 1997 the defendant valued this property at $336,000 on a mortgage application.
Much of the testimony dealt with the conduct of the parties during the marriage and their psychological status. The court finds the evidence supports the conclusions reached by Dr. Robyne Diller who performed CT Page 15975 court-ordered psychological evaluations of the parties. Dr. Diller found that the plaintiff suffers from a significant degree of depression and anxiety, considerable problems related to maintenance of attention and concentration, and her cognitive abilities are limited. These difficulties are exacerbated by the plaintiff's present, stress-producing, situation. Dr. Diller found the defendant to be an anxious, depressed, and angry man who suffers from limited insight, narcissistic beliefs and occasional flawed thinking. She also believed that Mr. Browning had the potential for violent acting out. To his credit, the defendant currently attends counseling sessions with Dr. Bloom.
The court concludes that both parties bear responsibility for the breakdown of this marriage, but in unequal shares. Although the defendant presently abstains, he did drink alcohol during the course of the marriage. The court finds the defendant's consumption of alcohol contributed to the breakdown of the marriage. The court does not find that the defendant was habitually intemperate, as claimed by the plaintiff.
The plaintiff testified to several incidents of physical abuse she sustained. The results of this physical abuse were graphically shown in photographs admitted into evidence. The plaintiff testified that this physical abuse was caused by the defendant. The defendant denied ever physically abusing the plaintiff and suggested the abuse was self inflicted. Although the plaintiff and the defendant shared a bedroom when the alleged physical abuse occurred, the defendant denied ever observing the marks of physical abuse shown in the photographs. The court does not find the defendant credible on this important issue. The plaintiff's testimony, and the photographs persuade the court that the defendant physically abused the plaintiff on more than one occasion. This physical abuse was a contributing cause of the breakdown of the marriage. The defendant bears the larger share of the responsibility for the breakdown of the marriage.
The plaintiff seeks to dissolve the marriage on the grounds of intolerable cruelty perpetrated by the defendant. Having considered all of the evidence regarding the defendant's conduct towards the plaintiff, the court concludes that the marriage should be dissolved on the grounds of irretrievable breakdown and not intolerable cruelty.
The plaintiff has requested the court enter a permanent restraining order against the defendant. Considering the evidence and the orders entered herein, and mindful of the protection available under General Statutes § 46b-15, the court declines to enter such an order. CT Page 15976
Whatever difficulties the parties have with each other, they share a common bond in their love for Nathan. The court has carefully considered the psychological evaluations performed by Dr. Diller, as well as her testimony, and the custody evaluation report prepared by Ms. DiGangi, Family Relations Counselor, as well as her testimony. Both professionals recommend the parties have joint legal custody of Nathan and each should have substantial access. Attorney Timothy Lenes, Nathan's court-appointed attorney, recommends that the parties share joint legal and physical custody of Nathan. The defendant seeks joint legal custody and equal access to the minor child. The pendente lite orders, which have been in effect for almost two years, provide for joint legal custody of the child.
The plaintiff does not agree to joint legal custody and she asks for sole custody of Nathan. Her position is likely the result of her present, negative, appraisal of the defendant at the culmination of this high-conflict dissolution.
The court concludes that it is in Nathan's best interest in sustained growth, development and well being for both of his parents to have joint legal custody. The evidence demonstrates both parties are loving, caring, parents and they are entirely suitable custodians for Nathan. SeeGiordano v. Giordano, 9 Conn. App. 641 (1987). It is in Nathan's best interest to continue to have primary residence with his mother and live in close proximity to his father so that Nathan may have substantial access to him. The proposed orders submitted by Attorney Lenes reflect the court's conclusions on access, consequently, many of them are adopted. Attorney Lenes is commended for the representation he provided Nathan.
The court chooses not to designate one party the primary decision maker, but rather, orders mediation if they cannot reach agreement. Both parties have a responsibility to Nathan to continue with their present counseling.
The court utilized Finplan to determine the defendant's guideline support obligation. The defendant was given head of household status and two dependents. The plaintiff was also given head of household status and two dependents. The recommended child support is $173 per week and the court declines to deviate from this amount.
In formulating its orders regarding property assignment, the court has carefully considered the provisions of § 46b-81. Both parties have provided a myriad of financial details arising out of this eight year CT Page 15977 marriage, which the court has considered. The parties must be mindful; this is a court of equity, not accountancy.
The defendant owned the property located at 490 Pendleton Hill Road for many years prior to the marriage; however, when the plaintiff moved in, she extensively redecorated the property. Although she did not work during the early years of the marriage, the plaintiff was the primary care giver for the parties' children. See Blake v. Blake, 207 Conn. 217
(1988). The parties worked together to convert a garage into a day care center for the plaintiff to operate, allowing her to simultaneously care for Nathan. All of the equity in the plaintiff's premarital home in Moosup was utilized by the parties, and in part, enhanced both properties on Pendleton Hill Rd. The present marital estate, approximately $1,120,000, consists primarily of assets owned by the plaintiff prior to the marriage, and assets he inherited from his father. The court has considered the sources of the marital assets, as well as their appreciation in value during the marriage. The plaintiff has minimal assets and her opportunity for the future acquisition of capital assets is limited by her education and abilities. The defendant is primarily responsible for the breakdown of this eight year marriage.
The defendant may retain title to his premarital and inherited assets; however, as a property assignment, the defendant is to pay the plaintiff the sum of $120,000 within 120 days. The court finds the defendant has the ability to pay this sum by way of borrowing or by sale of a portion of the numerous and substantial assets assigned to him. Although the plaintiff has resided at 490 Pendleton Hill Road throughout the marriage, the court concludes that it would not be equitable, or financially practical, to assign it to her.
A substantial portion of the taxable income of the parties for 2000 and 2001 is from the defendant's employment and capital gain income. The defendant is to pay the outstanding amounts due the Internal Revenue Service for tax years 2000 and 2001.
The defendant shall retain his volunteer fireman pension. The plaintiff shall retain any medical malpractice claim she may have.
Applying the criteria contained in § 46b-82 to the evidence, the court concludes that the plaintiff is in need of continued support by the defendant. This support is in the nature of rehabilitative alimony and is for a period of four years. This period of support will assist the plaintiff as she recovers her health, gains employment, and increases her earning capacity. The court has provided the plaintiff a "safe harbor" for earned income in order to facilitate her return to work. The alimony CT Page 15978 ordered is $200 per week for the first year, $175 per week for the second year, $150 per week for the third and fourth years. The COBRA premium for the plaintiffs continued health insurance is $81 per week; the parties are to equally pay this premium if the plaintiff elects the coverage. The defendant's contribution to the COBRA premium is in the nature of spousal support.
The evidence and the provisions of § 46b-62 persuade the court that the defendant should make substantial contributions toward the plaintiffs attorney's fees and the fees for the attorney for the minor child. The plaintiff has incurred attorney fees in the amount of $54,667.50 which are found to be reasonable. She has also incurred expert witness fees of approximately $5,000. The amount due the attorney for the minor child is $19,806.25, which is also found to be reasonable. The plaintiff's assets are minimal and the court is assigning the bulk of this significant marital estate to the defendant. It would undermine the financial orders entered herein if the plaintiff had to utilize a substantial portion of her property assignment for these fees. The court notes that the defendant has incurred attorney fees of approximately $120,000. The defendant is to pay $40,000 to the plaintiff's attorney within 120 days. The defendant is to pay $15,000 to the attorney for the minor child within 120 days. The plaintiff is to pay $4,806.50 to the attorney for the minor child within 120 days.
 Orders:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. The parties shall share joint legal custody and physical custody of the minor child Nathan. Mother's residence shall be considered the primary residence for the child's school purposes only, provided she resides within 15 miles of 490 Pendleton Hill Road, North Stonington, Connecticut.
2A. Father's access shall be from Friday at 5:00 p.m. until Monday morning at 8:00 am. when he shall return the child to school during the school year and to mother when school is not in session. However, child shall be with mother on the fourth weekend of each month and father shall not have the child on that weekend. Father shall have the child on any month that has a fifth weekend. Father shall also have the child every Wednesday at 5:00 p.m. until Thursday at 8:00 a.m. when father shall return him to school during the school year and to mother when school is not in session.
2B. Each party shall have the child for two non-continuous weeks during CT Page 15979 the school summer break provided they have notified the other party of their intention to exercise said access and the dates of such access by May 1st of each year. In even years mother's preference of dates will prevail, in odd years the father's preference will prevail.
2C. Parties shall alternate major holidays with father having Thanksgiving in even years and mother in odd years. Father shall have Christmas Eve day from 8:00 am. to 6:00 p.m. in even years and mother shall have the same in odd years. Mother shall have Christmas Eve at 6:00 p.m. until Christmas Day at noon in even years and father in odd years. Father shall have Christmas Day from noon until 8:00 p.m. in even years and mother in odd years. Father shall have Easter Day from 8:00 a.m. to 6:00 p.m. in odd years and mother in even years. The parties shall alternate the remaining holidays as follows:
New Year's Day 8:00 a.m. to 8:00 p.m. father odd years, mother even years;
Martin Luther King Day 8:00 am. to 8:00 p.m., mother odd years, father even years;
President's Day 8:00 a.m. to 8:00 p.m., father odd years, mother even years;
Memorial Day 8:00 a.m. to 8:00 p.m., mother odd years, father even years;
July 4th 8:00 a.m. to 8:00 p.m., father odd years, mother even years;
Labor Day 8:00 a.m. to 8:00 p.m., mother odd years, father even years;
Columbus Day 8:00 a.m. to 8:00 p.m., father odd years, mother even years;
Halloween from 5:00 p.m. to 8:00 p.m., mother odd years, father even years;
Mother's Day from 8:00 a.m. to 8:00 p.m. shall always be with mother and Father's Day from 8:00 a.m. to 8:00 p.m. shall always be with father.
2D. The February and April school vacations shall be alternated between the parties with the father having first choice in the even years and mother having first choice in the odd years.
2E. The holiday access schedule supercedes the regular access schedule. CT Page 15980
2F. If parties reach an impasse on any issues/decision making involving the child, they shall first submit the issue to mediation with a mediator/therapist before bringing the issue to court.
2G. Neither party shall relocate the child outside of the State of Connecticut without prior court approval or written agreement by the other party.
2H. If either party relocates more than 15 miles from 490 Pendleton Hill Road, North Stonington, that shall be considered substantial change in circumstances for modifying primary residence and the access schedule.
2I. Both parties shall continue in therapy until discharged and mother shall comply with her doctor's orders regarding her medication.
2J. Nathan shall continue in his individual therapy as long as it is recommended by his therapist.
3. Defendant shall pay guideline child support to the plaintiff in the amount of $173 per week. The parties shall pay unreimbursed medical expenses and childcare expenses for Nathan, in accordance with the child support guidelines, as follows: plaintiff 23%, defendant 77%. The defendant shall be entitled to claim the minor child as a dependency exemption.
4. The defendant shall maintain health insurance for Nathan as available through his employment.
5. The defendant shall maintain one of his existing life insurance policies in the amount of $100,000 for the benefit of Nathan for so long as he is a minor and he shall designate the plaintiff as trustee so long as Nathan is a minor.
6. The plaintiff shall maintain her existing life insurance policy and designate Nathan the beneficiary of at least $25,000 of the benefit for so long as he is a minor. She shall designate the defendant as trustee for so long as Nathan is a minor.
7. As authorized by Public Act 02-128, a motion or petition for an educational support order may be filed by either party at a subsequent date
8. The defendant is to pay alimony to the plaintiff in the amount of $200 per week for 52 weeks from the date of judgment. Thereafter, the CT Page 15981 defendant shall pay alimony in the amount of $175 per week for the next 52 weeks. Thereafter, the defendant shall pay alimony in the amount of $175 per week for the next 104 weeks. This award of alimony shall be nonmodifiable as to term. The plaintiff's gross income from employment shall not be grounds for modification of alimony unless it exceeds $20,000 per year. The alimony shall terminate upon the remarriage of the plaintiff or upon the death of either party.
9. The defendant shall designate the plaintiff as a beneficiary of $40,000 for one of his existing life insurance policies, and shall maintain said policy at his expense, so long as he has an alimony obligation to the plaintiff
10. The defendant is to take steps to allow the plaintiff to obtain COBRA health insurance benefits, if she wishes to obtain it, and the parties are to each pay one half of the cost of the premiums for such coverage. The defendant's contribution to the COBRA premium is in the nature of spousal support.
11. As property assignment, the defendant is to pay the plaintiff the sum of $120,000 within 120 days of the date of judgment. Contemporaneous with receipt of the $120,000 property assignment, the plaintiff shall quit claim her interest in 490 Pendleton Hill Road, North Stonington to the defendant. The plaintiff shall vacate the premises known as 490 Pendleton Hill Road, North Stonington, Connecticut within 60 days of receipt of the $120,000 property assignment. The defendant is responsible for payment of the mortgage on 490 Pendleton Hill Road, North Stonington, and he shall hold the plaintiff harmless from any liability thereon.
12. The defendant is to transfer $11,120 from his 401k account to a similar account in the plaintiff's name within 45 days from the date of judgment.
13. Except as provided for herein, the defendant shall retain all of the assets shown on his financial affidavit. The defendant shall retain any remaining proceeds of his IRAs that were liquidated with court approval.
14. The defendant shall return the plaintiff's 1992 Chevrolet Cavalier to her within 30 days of judgment.
15. The plaintiff shall retain her Washington Trust business account and the following items of personal property: her fish tank, her bedroom set, kitchen set, the white Victorian couch presently in the possession CT Page 15982 of the defendant, her personal belongings and the English-cut diamond ring.
16. Except as provided herein, each party is to pay the debts shown on their respective financial affidavits and shall hold the other harmless for any liability thereon.
17. The parties shall file a joint Federal and Connecticut income tax returns for 2000 and 2001 and the defendant shall pay any and all amounts due thereon.
18. The defendant is to pay $40,000 to the plaintiff's attorney within 120 days of judgment.
19. The defendant is to pay $15,000 to the attorney for the minor child within 120 days. The plaintiff is ordered to pay $4,806.50 to the for the minor child within 120 days.
 ___________________ Domnarski, J.
CT Page 15983